UNITED STATES, Appellant

v.

EVERETT B. GOODWIN, Lieutenant, U. S. Navy, Appellee

5 USCMA 647, 18 CMR 271

No. 5868
Decided April 15, 1955

LCDR M. M. Seydel, USN, for Appellant.
CDR James A. Brough, USN, for Appellee.
CDR John W. Shields, USN, for Amicus Curiae.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

### I

Upon trial by general court-martial, the accused officer was found guilty on two specifications alleging separate violations of the Uniform Code of Military Justice. The first specification was laid under Article 128, 50 USC § 722, and it charged him with assaulting a shore patrolman in the execution of his office. The second specification was founded on Article 134, 50 USC § 728, and it alleged he was drunk and disorderly in station. The court-martial sentenced him to be dismissed from the service and the convening authority approved the sentence. A board of review in the office of The Judge Advocate General of the Navy affirmed the findings of guilty but concluded that the sentence of dismissal was inappropriate for the crimes proven. It thereupon commuted the sentence to the loss of 200 unrestricted numbers. The Judge Advocate General of the Navy certified the case to this Court, requesting that we determine the issue of whether a board of review has the power to reduce a sentence of dismissal to a loss of numbers.

We are informed by the briefs submitted to us on this appeal that since the cause was certified to this Court,

648

the Secretary of the Navy has, on recommendation of The Judge Advocate General of the Navy, reviewed the record and, acting independently from the board of review, commuted the sentence of dismissal to a loss of 200 unrestricted numbers, approved the sentence as so commuted, and ordered it executed. As a result of that action, the accused officer notified the Clerk of the Court that he did not desire to support or oppose the decision of the board of review and we thereupon ordered amicus curiae to brief and argue the question.

In order to answer the issue presented, it is not necessary to relate the facts in detail. It is sufficient for the purpose of this opinion to state that the evidence was more than adequate to establish beyond a reasonable doubt that the accused was drunk in station, and that he committed an assault upon a member of the shore patrol, while the latter was performing his duty in attempting to restore order at a Naval Amphibious Base.

## II

Before considering the legal question of whether the decision of the board of review was within its powers, we call attention to what appears to be a misapprehension on the part of the board members. In doing this, we do not intend to question the board's right to find the sentence inappropriate, neither do we express any opinion on the severity of the punishment imposed by the court-martial. We merely point out that in using the provisions of paragraph 127 of the Manual and the Table of Maximum Punishments in the manner indicated in its opinion, the board of review incorrectly interjected limitations which do not apply. The board of review used the Table as a guide and concluded that a bad-conduct discharge would not be imposable for the offenses committed if the offender had been an enlisted man. It then reasoned that if a punitive discharge could not be imposed on the enlisted man, a dismissal was inappropriate for an officer. In rationalizing as it did, the board failed to give effect to paragraph 126*d,*

which states that an officer may be punished by dismissal when convicted of any offense in violation of an Article of the Code. Moreover, if the board of review intended to use a bad-conduct discharge as a measuring rod for determining the appropriateness of a dismissal, it overlooked Section B of paragraph 127, which provides that if an accused is found guilty of two offenses for none of which dishonorable or bad-conduct discharge is authorized, the fact that the authorized confinement without substitution for such offenses is six months or more will, in addition, authorize a bad-conduct discharge.

Lastly, the first specification alleges the offense of assault upon a member of the shore patrol who was in the execution of his office. That offense, if alleged under Article 134, carries a penalty of one year's confinement and a dishonorable discharge. We can assume arguendo that because the Government charged the accused under Article 128, the penalty provided for violating that Article ought not to be exceeded but if the measuring rod for appropriateness be the nature and seriousness of the act committed, then his conduct was far from being an ordinary assault. By way of suggestion, if the roles of the two characters were reversed, a bad-conduct discharge might not be considered inappropriate for an enlisted man and would undoubtedly be imposed.

## III

Because the certified question is of grave concern to the services and because the issue involved will be controlled largely by principles of statutory construction, we believe it advisable to develop historically the rules of military law governing the power to mitigate or to commute sentences imposed by courts-martial. Before setting out the various Congressional and Presidential enactments, we consider the common usage of the words and look to a recognized authority for their definition. We do this even though, as will be later pointed out, the Congress did not use either the term "commute" or "mitigate" when it granted boards

of review the power to consider the appropriateness of sentences.

Black's Law Dictionary, 4th ed, which is consistent with various standard dictionaries, defines "mitigation" as:

"Alleviation; abatement or diminution of a penalty or punishment imposed by law.

"Reduction, diminishing, or lessening amount of penalty or punishment."

The word "commutation" is defined in the same volume as:

"Alteration; change; substitution; the act of substituting one thing for another."

The difference between the two as used in military law is explained by Colonel Winthrop on page 471 of his Military Law and Precedents, 2d ed, 1920 Reprint. Insofar as material to our problem, he states:

". . . Commutation is distinguished from *mitigation,* which, as will hereafter be noticed, is a reduction of a punishment in degree or quantity only; the power to mitigate not authorizing the changing of the species of the penalty adjudged. But there are certain punishments not susceptible of being reduced in degree; consequently where one of these is imposed by the court, and the same is deemed too severe a penalty to be inflicted upon the accused, who yet, it is considered, deserves some measure of punishment, the mere power of mitigation is inadequate for the occasion, and *commutation,* or the substitution of a lesser penalty of a different nature, must be resorted to. Death and dismissal, for example, are punishments not admitting of lesser degrees or capable of being mitigated; they must therefore, when deemed too rigorous, be exchanged or *commuted* for distinct penalties of minor severity."

## IV

With the difference in definitions in mind, we pass on to consider the various Congressional enactments and the supplemental Manual provisions as they applied to the Army and later to the Air Force. Article 89 of the American Articles of War of 1806 made no mention of commutation but it referred to both pardon and mitigation. That Article clothed officers authorized to convene general courts-martial with both powers except in cases involving death sentences or dismissal of officers. Specifically it stated:

"ART. 89. Every officer authorized to order a general court-martial shall have power to pardon or mitigate any punishment ordered by such court, except the sentence of death, or of cashiering an officer; which, in the cases where he has authority (by Article 65) to carry them into execution, he may suspend, until the pleasure of the President of the United States can be known; which suspension, together with copies of the proceedings of the court-martial, the said officer shall immediately transmit to the President for his determination. And the colonel or commanding officer of the regiment or garrison where any regimental or garrison court-martial shall be held, may pardon or mitigate any punishment ordered by such court to be inflicted."

The Articles of War enacted in 1874 made no substantial change in the previous quoted Article although it was renumbered and became Article 112. However, to disclose the manner in which the authors of the early Manuals understood the enactment, we quote paragraphs 5 and 8 found on pages 67 and 68 of the Manual for Courts-Martial, 1895. Significantly, the Manuals published in 1898, 1901, 1905, and 1908 contain substantially the same statements. Paragraph 5 is:

"Every officer authorized to order a court-martial has power to pardon or mitigate any punishment adjudged by it, except that of death, or the dismissal of an officer."

Paragraph 8 states:

"While a reviewing authority may remit or mitigate a sentence, he can not change it so as to impose a punishment of a different nature; thus, he can not change a sentence of dis-

honorable discharge awarded an enlisted man to confinement at hard labor."

Because the Articles of War which became effective in March 1917 superseded the Code of 1874, and no intervening changes modified Article 112, we move on to consider the later Articles and the Manual published in explanation thereof. In 1917, Article of War 50 became the controlling provision and it read as follows:

"ART. 50. Mitigation or Remission of Sentences.—The power to order the execution of the sentence adjudged by a court-martial shall be held to include, *inter alia*, the power to mitigate or remit the whole or any part of the sentence, but no sentence of dismissal of an officer and no sentence of death shall be mitigated or remitted by any authority inferior to the President.

"Any unexecuted portion of a sentence adjudged by a court-martial may be mitigated or remitted by the military authority competent to appoint, for the command, exclusive of penitentiaries and the United States Disciplinary Barracks, in which the person under sentence is held, a court of the kind that imposed the sentence, and the same power may be exercised by superior military authority; but no sentence extending to the dismissal of an officer or loss of files, no sentence of death, and no sentence approved or confirmed by the President shall be remitted or mitigated by any other authority."

That Article was the subject of a contemporaneous construction by the Manual for that year and two paragraphs must be considered. Paragraph 380 defines mitigation as follows:

"380. *Mitigation of Punishment— Definition.*—By mitigating a punishment is meant a reduction in quantity or quality, the general nature of the punishment remaining the same. (Digest, p. 177, CXII, B.)"

Paragraph 384 leaves no doubt about who possessed the power to commute and whether changing a discharge, an equivalent punishment to a dismissal,

to some other form of punishment was commutation. It prescribed:

"*Commutation of sentences.*—The power to commute sentences imposed by military tribunals, not being vested in military commanders, can be exercised by the President alone. Therefore a department commander can not commute to confinement at hard labor a sentence of dishonorable discharge awarded an enlisted man."

There were some modifications made to Article of War 50, 1917, when the new Act was passed in 1920, but it is of importance to note that the power to commute was limited to the President or to other designated officers provided the President delegated his authority to them. We find Article 50 of that year to be phrased in the following language:

"When empowered by the President so to do, the commanding general of the Army in the field or the commanding general of the territorial department or division, may approve or confirm and commute (but not approve or confirm without commuting), mitigate, or remit and then order executed as commuted, mitigated, or remitted any sentence which under these articles requires the confirmation of the President before the same may be executed."

Paragraph 87*b* of the Manual for Courts-Martial, U. S. Army, 1928, touches further on that power. It places the authority to commute only in the President or his designee. However, it grants the power of mitigation to other officials. We quote its provisions:

"The power to order the execution of the sentence includes the power to mitigate or remit the whole or any part of the sentence (A. W. 50); but in any case the punishment imposed by the sentence as mitigated or remitted must be included in the sentence as imposed by the court and should be one that the court might have imposed in the case. Thus a sentence as mitigated should not provide for confinement in excess of six months without dishonorable discharge.

**651**

"To mitigate a punishment is to reduce it in quantity or quality, the general nature of the punishment remaining the same. A sentence can not be commuted except by the President or by a commanding general empowered by the President under A. W. 50."

In the same Act of 1920, Congress brought boards of review into existence as part of the official military judicial system. This was the beginning of quasi-judicial boards in military justice, putting aside boards of inquiry. In granting boards of review authority to review findings and sentence, Congress declined to grant them any power to alter, mitigate, or reduce the sentence. Their authority was limited to a determination of whether the record was legally sufficient to support the finding or sentence. If the board found the record insufficient and the findings were concurred in by The Judge Advocate General, the case was sent back to the convening authority for a rehearing. If the board of review concluded the record of trial was legally insufficient to support the findings or sentence, or that errors of law had been committed injuriously affecting the substantial rights of the accused, and The Judge Advocate General did not concur, he was required to forward all papers in the case directly to the Secretary of War for the action of the President. In that event, the latter was expressly given the power to confirm the action of the reviewing authority or confirming authority below in whole or in part, with or without remission, mitigation, or commutation. From this enactment it would appear that any power to either remit, commute, or mitigate a sentence did not vest in a board of review.

In an Act approved June 24, 1948, Congress made substantial changes in the appellate military justice procedure. It continued boards of review as appellate agencies, but brought into existence an additional appellate body designated as the Judicial Council. The powers of the board of review to consider matters on appeal were not substantially enlarged as may be gathered from the wording of Article 50($d$)(3) and (4), 10 USC § 1521:

"(3) When the Board of Review is of the opinion that the record of trial in any case requiring confirming action by the President or confirming action by the Judicial Council is legally insufficient to support the findings of guilty and sentence, or the sentence, or that errors of law have been committed injuriously affecting the substantial rights of the accused, it shall submit its holding to the Judge Advocate General and when the Judge Advocate General concurs in such holding, such findings and sentence shall thereby be vacated in accord with such holding and the record shall be transmitted by the Judge Advocate General to the appropriate convening authority for a rehearing or such other action as may be proper.

"(4) In any case requiring confirming action by the President or confirming action by the Judicial Council in which the Board of Review holds the record of trial legally insufficient to support the findings of guilty and sentence, or the sentence, and the Judge Advocate General shall not concur in the holding of the Board of Review, the holding and the record of trial shall be transmitted to the Judicial Council for confirming action or for other appropriate action in a case in which confirmation of the sentence by the President is required under article 48($a$)."

The Judicial Council, however, was granted certain powers with respect to confirmation, commutation, vacation, or reduction of sentences provided The Judge Advocate General of the service concurred with its action. Article 48 ($c$) of the 1948 Act, 10 USC § 1519, provided:

"In addition to the approval required by article 47, confirmation is required as follows before the sentence of a court-martial may be carried into execution, namely:

" . . . . . .

"($c$) By the Judicial Council, with the concurrence of The Judge Advocate General, with respect to any sentence—

. . . . . .

(3) involving the dismissal of an officer other than a general officer, or . . . ."

While we have not quoted the complete Article, we mention the fact that the Judicial Council was not granted the power to confirm a death sentence and so, as will be seen, it could not act to change that particular sentence. However, different powers were given with respect to a sentence to dismissal of an officer.

Congress, having granted the Judicial Council, with the concurrence of The Judge Advocate General, the right to confirm a sentence of dismissal of an officer other than a general officer, proceeded one step further in that area and granted to those combined officers the right to change the dismissal to another form of punishment. Article of War 49, 10 USC § 1520, so far as relevant, states:

"The power to confirm the sentence of a court-martial shall be held to include—

. . . . . .

"(b) The power to confirm, disapprove, vacate, commute, or reduce to legal limits the whole or any part of the sentence. . . ."

In further considering the 1948 Act, it must be kept in mind that, although the convening authority was given the power to disapprove the whole or any part of the sentence, he could not commute. The wording of the separate Articles of that year indicates clearly that Congress fully recognized and intended to retain in military law the difference between the power to change and the authority to reduce a sentence. That interpretation is supported by more than our conclusion, as paragraph 87b of the Manual for Courts-Martial, U. S. Army, 1949, page 96, has this to say:

"To mitigate a punishment is to reduce it in quantity or quality, the general nature of the punishment remaining the same. A sentence can not be commuted (changed to punishment of a different nature) except by a confirming authority."

## V

Having developed the Articles of War governing the Army prior to the enactment of the Uniform Code of Military Justice, we pass on to consider the law as it was developed in the Naval Service. Historically in the Navy, the power to commute has been possessed by the Secretary of the Department and, of course, the President of the United States. Referring to the Articles for the Government of the Navy, 34 USC § 1200, as our source of information, we find two sections which authorize officers to modify the sentences imposed by courts-martial. Article 54 of those Articles provides:

"Article 54 (a). *Remission and Mitigation of sentence.* Every officer who is authorized to convene a general court-martial shall have power, on revision of its proceedings, to remit or mitigate, but not to commute, the sentence of any such court which he is authorized to approve and confirm. (R. S. § 1624, art. 54).

"(b) *Power of Secretary of Navy over proceedings and sentences of courts-martial.* The Secretary of the Navy may set aside the proceedings or remit or mitigate, in whole or in part, the sentence imposed by any naval court-martial convened by his order or by that of any officer of the Navy or Marine Corps. (Feb. 16, 1909, c. 131, § 9, 35 Stat. 621.)"

The previous Article is explained in section 481 of Naval Courts and Boards and its provisions undoubtedly account for the large number of sentences which have been commuted by the Secretary of the Navy. That section sets out in the following language the principles applied in the Naval Service:

"481. *Commutation of sentences.*— The power to commute sentences, that is, to change the nature of the punishment, is not vested in any officer of the Navy. Every officer who is authorized to convene general courts-martial is empowered by Article 54 (a), A. G. N., to remit or mitigate, but not to commute, any sentence which by Article 53, A. G. N., he is authorized to approve and confirm. The broad power conferred

upon the Secretary of the Navy by Article 54(*b*), A. G. N., to mitigate the sentence imposed by any naval court-martial includes the power to commute a death sentence to life imprisonment, and dismissal to loss of numbers or suspension from duty on one-half pay. In summary courts-martial cases, the immediate superior in command has the same power as that vested in the convening authority by Article 33, A. G. N., which is in terms confined to remitting the whole or a part of the sentence adjudged by the court and does not include power to commute a sentence; for example, he cannot change a sentence of bad-conduct discharge to a specified loss of pay or confinement to restriction to ship or station."

The Naval Courts and Boards' interpretation of Article 54 finds support in, or may have brought about, a decision of the Circuit Court of Appeals, 5th Circuit, in Aderhold v. Menefee, 67 F 2d 345. The Court there considered the authority of the Secretary of the Navy to commute a sentence. The decision did not hold that the terms "mitigation" and "commutation" were synonymous. Neither did it hold that it was necessary to abandon the ordinary meaning of the words. It merely reached a conclusion that under the express wording of Article 54, Articles for the Government of the Navy, Congress had, on the one hand, denied to all officers of the Navy the power to commute, and had, on the other hand, granted to the Secretary of the Navy unlimited authority to deal with sentences. From that premise, the Court of Appeals reasoned that Congress has expressed its intent to clothe the Secretary of the Navy with the authority to commute sentences. We quote from this decision:

"... Section 1200, art. 54(a), confers upon the officer authorized to convene a general court-martial the power 'to remit or mitigate, but not to commute, the sentence.' And section 1200, art. 54(b) provides: 'The Secretary of the Navy may set aside the proceedings or remit or mitigate, in whole or in part, the sentence imposed by any naval court-martial.'

Under these articles, a sentence of death cannot be carried into effect without the approval of the President. The officer who convened the general court-martial in this case, it is to be conceded, had no power to commute the sentence; but, if the Secretary of the Navy had such power and exercised it, the President was not called upon to act in the matter. ... The Secretary of the Navy is given the power to set aside proceedings before a court-martial, or remit in whole or in part the sentence which it has imposed; but, unlike the officer who convenes the court-martial, he is not in terms denied the power to commute the sentence. In our opinion, the broad power conferred upon him to mitigate includes also the power to commute. His power to mitigate punishment is as comprehensive as was the power of the President under the Act of April 23, 1800, 2 Stat. 51. In an able opinion by Attorney General Wirt the President is stated to have the power under that early statute to commute a sentence of death into one of service and restraint for a limited time. 1 Op. Attorney General, 327. In that opinion it is well said that a sentence of death can be mitigated only by changing it, and that to hold otherwise would be to compel the President by pardon to free the accused altogether, or to subject him to the severest penalty of all. We conclude that the power of the Secretary of the Navy to mitigate a sentence of a court-martial includes the power to commute that sentence to life imprisonment, and that, this power having been exercised, the sentence as modified, not extending to the loss of life, was valid, and could be carried into execution without being confirmed by the President."

## VI

Summing up our review of the enactments prior to the effective date of the Uniform Code of Military Justice, we find in all the Congressional enactments and in all the military precedents a clear recognition of the difference between the power to commute and the

authority to mitigate. Furthermore, we find that in both the Army and Navy enactments Congress consistently expressed its intent not to blend the two into one. Throughout the various changes in the laws, it maintained the difference by granting to officers inferior to a Secretary of a Department only the power to reduce or mitigate sentences, and at the same time gave to the President or to the Secretary of the Navy the authority to commute or change their nature. A thorough research of the various Congressional acts will establish that at no time has any officer inferior to the President or his specific designee, in cases prosecuted under the Articles of War, or the Secretary of the Navy, in cases tried pursuant to the Articles for the Government of the Navy, ever been authorized to change the nature of a sentence of death or dismissal. In making that observation, we have not overlooked the enactment in 1948. There, for the first time some one other than the President or a Secretary of the Department could commute a dismissal to some other form of punishment, but then the power was hedged in by certain limitations. For a short period of time the Judicial Council, if The Judge Advocate General concurred, could change the form of the sentence and the nature of the punishment. However, when Congress eliminated the Judicial Council, the board of review did not fall heir to its powers. Only a specific delegation of authority by Congress would vest the board with authority to substitute punishments. Legislation as consistent as that outlined herein bespeaks a Congressional intent to reserve the power to substitute a form of punishment for another to certain named individuals in the Executive Branch. With that as a background, we pass on to our interpretation of the Uniform Code of Military Justice.

## VII

We start out by saying that if Congress intended to permit boards of review to change the quality and nature of the sentence imposed on an accused by a court-martial, it chose words which convey a distinctly contrary intent. We can hardly imagine a choice of words which would be more indicative of an intent to restrict a board of review to reducing sentences in kind than those used in various sections of the Uniform Code. There are a number of provisions which shed light on the Congressional intent and they, too, are explained in the Manual published contemporaneously with the 1950 Act. The first two are Articles 66 and 64, 50 USC §§ 653 and 651. The first defines the powers of the board of review in determining the appropriateness of sentences, and this is the language used:

"(c) In a case referred to it, the board of review shall act only with respect to the findings and sentence as approved by the convening authority. It shall affirm only such findings of guilty, and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved. In considering the record it shall have authority to weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses."

For emphasis we repeat that the language permits affirmation of the sentence or such parts of the sentence as the board determines should be approved. It says nothing about powers to commute or mitigate, except as they may be implicit in the power to affirm in part. It says no more than this: the board shall act only with respect to the sentence as approved by the convening authority, and its power to take action thereon must be found in words which restrict it to an approval of any part or amount of the particular sentence which is the product of the court-martial and the convening authority. Within that grant of authority may not be found the power to resentence the accused to another form of punishment. Words have to be tortured into a false meaning to reach any other conclusion.

In so far as Article 64 deals with the powers of the convening authority over the sentence, it is important to consider the similarity of the language to that

used in Article 66. Generally speaking, a convening authority has more latitude in reducing a sentence than does a board of review, but in spite of that, he has no authority to change its nature. Article 64 of the Code grants him this authority:

"In acting on the findings and sentence of a court-martial, the convening authority shall approve only such findings of guilty, and the sentence or such part or amount of the sentence, as he finds correct in law and fact and as he in his discretion determines should be approved. Unless he indicates otherwise, approval of the sentence shall constitute approval of the findings and sentence."

The difference between the powers granted by the two Articles of the Code may be better appreciated by taking note of the slight change in one phrase. That is, the convening authority is permitted to exercise his discretion in approving the whole or part of the sentence while the board of review is limited to the record. Yet the Manual for Courts-Martial, United States, 1951, in dealing with the powers of the convening authority to substitute ·punishments, has this to say (paragraph 88c):

"See 105a and Article 71 as to commutation. The convening authority may, subject to the limitations in 88a, approve a part of a sentence adjudged by a court-martial, but unless he is empowered to commute a sentence, that is, to change the nature of the punishment, the sentence approved by him must be included in the sentence adjudged by the court and must be one that the court might have imposed in the case. However, when a court has adjudged a mandatory sentence to imprisonment for life (Art. 118(1) and (4)), the convening authority may approve any sentence included in that adjudged by the court.

• • • • • •

"A sentence is included in the sentence adjudged by the court if it amounts to a mitigation of the sentence adjudged, that is, a reduction in quantity or quality, the general nature of the punishment remaining the same. Thus a sentence of dishonor-

able discharge may be mitigated to bad conduct discharge, but a bad conduct discharge may not be mitigated to any other punishment."

It is to be noted that the above quoted provision of the Manual refers to paragraph 105a and Article 71. The former identifies those individuals in the military judicial system who have the power to change the nature of the punishment. It provides as follows:

"The power to commute, that is to change a punishment to one of a different nature, may be exercised by the President and by the Secretary of a Department (or such Under Secretary or Assistant Secretary as may be designated by him). See Articles 71a and b."

Article 71 of the Code, 50 USC § 658, referred to above, is as follows:

"(a) No court-martial sentence extending to death or involving a general or flag officer shall be executed until approved by the President. He shall approve the sentence or such part, amount, or commuted form of the sentence as he sees fit, and may suspend the execution of the sentence or any part of the sentence, as approved by him, except the death sentence.

"(b) No sentence extending to the dismissal of an officer (other than a general or flag officer), cadet, or midshipman shall be executed until approved by the Secretary of the Department, or such Under Secretary or Assistant Secretary as may be designated by him. He shall approve the sentence or such part, amount, or commuted form of the sentence as he sees fit, and may suspend the execution of any part of the sentence as approved by him. In time of war or national emergency he may commute a sentence of dismissal to reduction to any enlisted grade. A person who is so reduced may be required to serve for the duration of the war or emergency and six months thereafter."

While those subsections are dealing with the execution of sentence, the particular phraseology of "commuted form of the sentence" would be distinctly un-

necessary if the words concerning approval of a part or amount of a sentence permitted a substitution of one type of sentence for another. Why should Congress be concerned with using that particular quoted phrase if the authority to approve part of a sentence included the power to substitute? Those words are intended for a particular purpose, yet they would be redundant if we concluded that boards of review had the authority to approve a commuted form of punishment. From the terms used, we sense a deliberate and calculated use of them to mark out the greater and expanded powers of the President and the Secretary of a Department which were not delegated to boards of review. The inclusion of the power to approve the commuted form of punishment in Article 71 and its omission in Article 66 is convincing evidence that Congress did not intend to give boards of review the authority to approve a commuted form of sentence, for it is a clear indication that the omission was not inadvertent.

We have passed indirectly on this problem in two previous cases. In United States v. Bigger, 2 USCMA 297, 8 CMR 97, a board of review had occasion to consider a premeditated murder conviction. In reviewing the record, it concluded the evidence sustained only a finding of the lesser included offense of unpremeditated murder. It thereupon affirmed a sentence of confinement for life. In dealing with the problem in that instance, we intended to make clear the concept that there the board of review was faced with an illegal sentence. Clearly, no court or quasi-judicial body can affirm a sentence which is incorrect in law. Moreover, Article 66(c) of the Code specifically so provides. We thereupon concluded the law prevented boards of review from affirming an illegal sentence and when that situation arises the power to reduce the sentence to a legal one is an inherent power of the board. No question of policy or clemency was involved in that affirmance, as Congress had set the limit beyond which the sentence could not go. From our construction of the sections of the Code therein controlling, we concluded that either an affirmance of a sentence of confinement or the granting of a rehearing was demanded. The problem is different here because we are not confronted with a sentence which is vitiated by illegality. In our opinion, at page 304, we stated:

"Clearly, the board of review was acting within the authority of Article 59(b) when it approved a finding of guilty of unpremeditated murder, a lesser included offense of that found by the court-martial. If it had that power then by Article 66(c), it could approve only such sentence or part thereof as was correct in law. The reduced finding rendered the sentence as originally imposed illegal so unless the board had the power to change the sentence to confinement it had no alternative other than to grant a new trial. Going one step further, if it must grant a new trial then Congress intended to restrict Article 59(b) in a manner neither expressed nor implied."

Sometime thereafter in United States v. Freeman, 4 USCMA 76, 15 CMR 76, we considered another facet of the problem. In that case we specifically stated that if the sentence were legal, a board of review could not change a death penalty to one of confinement for life. We quote from our decision in that case:

"Under the above-quoted provision [Article 66(c), 50 USC § 653], the board was not required either to change the sentence or order a new trial. As a matter of law, it could not do the former. The death penalty was adjudged by the court-martial, and the offense alleged in the first specification would support that finding. When the board of review affirmed that finding, the sentence was legal. An attempt to reduce the sentence would have necessarily resulted in a commutation of sentence. Congress has not granted that power to boards of review. Cf. United States v. Bigger, 2 USCMA 297, 8 CMR 97."

Counsel seeking to sustain the decision of the board of review press on us the argument that the Supreme Court, in the case of Mullan v. United States, 212 US 516, 29 S Ct 330, 53 L

ed 632, settled the law in the civilian courts and that we should follow that decision. Under different circumstances the argument would carry great weight, but under the present Uniform Code of Military Justice it is neither precedent nor persuasive. There the Supreme Court held that changing a sentence of dismissal to a loss of numbers was exercising the powers of mitigation. At first glance that holding might be considered as diametrically opposite to the results we reach, but such is not the case. Assuming arguendo it was, we are not bound by that construction for at least three reasons. First, the law has been changed. Second, the opinion concedes a difference between the terms mitigation and commutation. Third, the President acted well within his authority in taking the action he did in that case, and the Supreme Court was not faced with the necessity of considering whether the President acted under his power to commute or mitigate, as he possessed both. It must be remembered that case was decided in 1909, and it involved a Naval officer. Article 54, Articles for the Government of the Navy, supra, was in force and effect at the time of the decision and that Article has been interpreted to permit the Secretary of the Navy to commute. If he had the authority, a forticri, so did the President. We could, therefore, distinguish this case from Mullan on the three aforementioned grounds. But we are willing to accept the rationale of the Supreme Court and the results it reached. Under our interpretation of the law at that time and at the present time, we would not reach a different conclusion.

We could not fully cover the subject of this litigation without mentioning that in certain instances the Attorney General has rendered opinions in which he has stated that in mitigating a sentence, the President may commute it by substituting a different form of punishment. It appears that at times the words were used synonymously and thus inaccurately. Colonel Winthrop recognized some confusion in the terms, and in a footnote at page 471 of his Military Law and Precedents, 2d ed, 1920 Reprint, he states:

"The leading adjudged case on the quality of commutation is *Ex parte Wells*, 18 Howard, 307, with which see Opinion of the Justices, 14 Mass., 472; Perkins *v.* Stevens, 24 Pick. 278; Lee *v.* Murphy, 22 Grat., 789; Cooley, Prins. Const. Law, 100;—also 5 Opins. At. Gen., 369, in which is practically overruled an earlier opinion of Mr. Wirt, in 1 Opins., 328, in which commutation is confused with mitigation. It may be added that the phraseology of some of the existing statute law has also tended to confuse the student. Thus, while the Act of July 13, 1866, provided that in time of peace no officer should be dismissed except in pursuance of the sentence of a general court-martial, or 'in *commutation* thereof,' using here the proper term, this term, though retained in one part of the Revised Statutes,—Sec. 1229—has been carelessly changed to '*mitigation*' in the 99th Art. of War and in Art. 36 of the naval code.

"It may be noted in this connection that the naval code—in Arts. 54 and 33—expressly prohibits the commutation of sentences."

In concluding our development of this problem, we are convinced that even though we accept the doctrine of the United States Supreme Court in Mullan, and the views expressed by other authorities, to the effect that changing a sentence of dismissal to a loss of numbers can be treated as being either mitigating or commuting, nevertheless, a board of review cannot change the former form of punishment to one of its own liking. It is certain that a board cannot commute, and if this be mitigation in any sense of the word, the board is restricted by the Code to a reduction in kind. Viewed within the confines of the present Act, the power granted to a board does not permit a substitution of a different form of punishment. In the final analysis it is not crucial what content is put in either term, as all the board of review is authorized to do is to act on the sentence affirmed by the convening authority so

as to approve it in its entirety or to approve any of its component parts on a reduced scale. The delegation of power to approve all or any part of one form cannot be construed to permit a complete change to another and different form.

All protest to the contrary, a dismissal from the service is a final and absolute separation from the Army, Navy, Air Force, Marine Corps, or Coast Guard, and that is not a divisible sentence. By the sentence imposed by this court-martial, the officer's service was terminated. The action taken by the board of review did not affirm the termination or any part or amount of it. On the contrary, it reinstated the accused, returned him to duty, and only reduced him on the promotion list. The approved sentence is so dissimilar to the one affirmed by the convening authority as to permit no contention that one is part or parcel of the other. The difference in kind and nature is so pronounced that by no rule of common sense, statutory construction, or precedent, can it be considered as an integral part of the sentence imposed.

In hopes we will state the law as it is now provided for in the Code, and restate what we believe the law always has been in military services, we sum up our views. Specifically, only the Chief Executive and the Secretaries of the Departments or their Assistants, if so designated, have the power to change a dismissal from the service to any other form of punishment. Only the President can change a sentence of death to confinement for life or for a term of years. Generally, the President and the enumerated Secretaries and their Assistants alone can commute a sentence, and we use the word "commute" in its generally accepted sense, that is, change in form. Mitigation we restrict to a reduction in kind.

Judge BROSMAN concurs.

QUINN, Chief Judge (dissenting):
I dissent.

Although I disagree with a number of statements made in the majority's opinion, I need not detail my objections. I strongly dissent from its conclusion that a board of review cannot reduce a sentence of dismissal to punishment in a lesser amount when on the basis of the entire record it deems it appropriate to do so. Article 66, Uniform Code of Military Justice, 50 USC § 653. I find the majority's conclusion objectionable as a matter of law and as a matter of common sense.

I am convinced that the board of review has the unqualified power, and the duty, to change a dismissal sentence which, on the basis of the whole record, it considers not to be appropriate punishment. Certainly a major purpose of the Code was to remove any influence of command control from a court-martial. This objective extends to the sentence as well as to the findings, and Congress was fully aware of that fact. See Hearings before the House Committee on Armed Services, 81st Congress, 1st Session, on H. R. 2498, pages 627, 640, 647, 722, 729, 785. Its awareness is clearly evidenced by its creation of the board of review as an integral part of the appellate procedure. The board's power extends not only to the law, but to the facts and the sentence. Article 66 provides that the board of review is to review each case before it, and affirm the "sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved."

The majority restricts the power of the board of review to affirm a sentence by limiting it to affirmance of the whole or part of the sentence. In so doing, it completely excludes from consideration the authority of the board to affirm any "amount" of the sentence. If these words are not to be arbitrarily ignored, they must have some meaning; and if the meaning is purposeful, it must be different from the immediately preceding portion which reads, "or such part" of the sentence. Consequently, I am persuaded that Congress intended to confer upon the board of review the power to approve a sentence which, while not necessarily a part of the whole, is lesser in amount than that adjudged by the court and approved by the convening authority. A reference

to the hearings before the Congressional Committees serves to emphasize that intention.

From the record of the Congressional hearings, it appears that at least two of the services believed that the power over sentence procedure which was to be conferred upon the board by the proposed bill was so sweeping as to correspond to that previously exercised by the confirming authorities. The statement of Major General Green, The Judge Advocate General of the Army, submitted to the Senate Committee reads as follows:

". . . The powers which article 66 gives them have heretofore been exercised by the confirming authority, i.e., the President, the Secretary, or the Judicial Council and the Judge Advocate General. . . .

"I urge you to leave the power to commute and consider nonlegal matters with a confirming authority. . . ." [Hearings before Senate Committee on Armed Services, 81st Congress, 1st Session, on S. 857 and H. R. 4080, pages 258–259.]

See also: Statement and testimony of Admiral Russell, ibid, pages 285, 287. Yet, in spite of the service efforts to limit the scope of the board's power to review a sentence, the broad language of the bill was retained when enacted into law as Article 66 of the Uniform Code.

Even if substitution of loss of numbers for dismissal amounts to commutation of a sentence, it does not mean that a board of review is without authority to make such substitution in a given case. In United States v. Bigger, 2 USCMA 297, 8 CMR 97, we emphasized the cardinal rule that a statute should be construed so as to give force and effect to each of its separate provisions. Applying that rule to Article 66 I have no doubt that a board of review can reduce dismissal to a loss of numbers on the basis of its power to affirm a sentence which is lesser in "amount" than that approved by the convening authority.

Paradoxically, I am confirmed in my opinion by the effect of the conclusions reached by the author of the majority opinion. Thus, he has previously held that one of the alternative courses of action open to a board of review, if it finds in a particular case that dismissal is too severe a punishment, is to order a rehearing. United States v. Voorhees, 4 USCMA 509, 16 CMR 83. See: United States v. Freeman, 4 USCMA 76, 15 CMR 76. This impresses me as being a recognition of the authority of the board of review to do by indirection exactly what he says it may not do directly. Implicit in the order for a rehearing is a mandatory direction that, on such rehearing, the sentence to be adjudged must be less than dismissal. If such direction is not implied, what is the board of review to do if, on the rehearing, dismissal is again imposed? Will it once more order a rehearing? Will it continue to do so until some court-martial adjudges a sentence less than dismissal? Or will the case be referred to another board of review for a possible change of result?

The appellate process is no game of "sudden death." Congress clearly intended to provide a definitive appellate review of the sentence. The board of review was constituted as the authority to determine the appropriateness of any sentence, whatever its nature, and to cut down that sentence in any amount, if it determined that the adjudged sentence was too severe. We should not circumscribe that power by any empty procedural ritual. See United States v. Walker, 1 USCMA 580, 5 CMR 8.

The real issue in this case is not to distinguish between commutation and mitigation, but whether loss of numbers is a punishment which is a lesser "amount" than dismissal. See United States v. Kelley, 5 USCMA 259, 17 CMR 259. Plainly, it is. However, even if the question is considered from the standpoint of the difference between commutation and mitigation, the action taken by the board of review is proper.

In Mullan v. United States, 212 US 516, 53 L ed 632, 29 S Ct 330, the same problem was presented to the United States Supreme Court. There the accused, a commander in the Navy, was

tried and convicted of drunkenness and drunkenness on duty. The court-martial sentenced him to dismissal and the Secretary of the Navy approved the dismissal. Later, the President substituted for the dismissal, a reduction in numbers so that the accused would be placed at the foot of the list of commanders, suspension of rank and duty, and loss of one-half pay for five years. It was contended that the President's action was illegal in view of the provisions of Article 54, § 1624, of the Revised Statutes which read as follows:

"Every officer who is authorized to convene a general court-martial shall have power, on revision of its proceedings, to remit or mitigate, but not to commute, the sentence of any such court which he is authorized to approve and confirm."

The United States Supreme Court rejected the claim. In an unanimous opinion it said:

"The court of claims was of opinion that this section did not apply to the action of the President of the United States. If it be conceded for this purpose that it is applicable to the President (§ 1624, arts 38 and 53, of the Revised Statutes), we are of the opinion that the President's action did, in fact, mitigate the previous sentence of the court-martial as approved by the Secretary of the Navy. It may be conceded that there is a technical difference between the commutation of a sentence and the mitigation thereof. The first is a change of a punishment to which a person has been condemned into one less severe, substituting a less for a greater punishment by authority of law. To mitigate a sentence is to reduce or lessen the amount of the penalty or punishment. 1 Bouvier's Law Dict. 374; 2 Id. 428.

"When the President otherwise confirmed the sentence of the Navy Department from absolute discharge from the Navy to reduction in rank and duty for the period of five years on one-half sea pay, he did what in terms he undertook to do; and, by the lessening of the severe penalty of dismissal from the Navy, approved by the Department, reduced and diminished, and therefore mitigated, the sentence which he was authorized to approve and confirm against the appellant, or mitigate in his favor." [Mullan v. United States, supra.]

The majority maintain that the law has been changed since the decision of the Supreme Court in the *Mullan* case. Admittedly, the particular words have been changed, but the substance of the statutes is unaltered. If it was not commutation to change dismissal to reduction in numbers, at the time of the *Mullan* case, it is not commutation here.

I would, therefore, affirm the decision of the board of review.