**UNITED STATES, Appellee,**

v.

**Jackie L. HODGES, Private U.S. Army, Appellant.**

**No. 51,238.**

**CM 446216.**

U.S. Court of Military Appeals.

July 14, 1986.

For Appellant: *Lieutenant Colonel Paul J. Luedtke* (argued); *Colonel Brooks B. La Grua* (on brief); *Colonel William G. Eckhardt* and *Captain Frank J. DiGiammarino.*

For Appellee: *Lieutenant Colonel Larry D. Williams* (argued); *Colonel James Kucera* and *Lieutenant Colonel Adrian J. Gravelle* (on brief); *Lieutenant Colonel Gary F. Roberson.*

*Opinion of the Court*

EVERETT, Chief Judge:

In this appeal from his general court-martial conviction,[1] appellant complains that the Court of Military Review improperly commuted his adjudged dishonorable discharge to an additional 12 months' confinement. We agree.

1. Appellant pleaded guilty to and was convicted of absence without leave and thirteen specifications of uttering checks with intent to defraud, in violation of Articles 86 and 123a, Uniform Code of Military Justice, 10 U.S.C. §§ 886 and 923a, respectively.

I

Appellant pleaded guilty at trial to all charges and specifications pursuant to a pretrial agreement which provided that, in exchange for those pleas and for entering into a stipulation of fact, the convening authority would "approve no sentence in excess of: 1. confinement at hard labor for twenty-one (21) months; 2. reduction to Private E–1; and any other lawfully adjudged punishment." After he had conducted a thorough inquiry into the stipulation and into the providence of the tendered pleas, the military judge entered findings of guilty and moved to the presentencing hearing.

During those proceedings, appellant testified, "The thing that concerns me here most today is being discharged from the armed services. I do not want to be discharged, sir. I would like to stay in." Additionally, defense counsel vigorously argued against a punitive discharge being adjudged and indicated that "if Private Hodges returns to active duty at some point he can continue to provide a useful service for the United States Government or the United States Army [and] at the same time have an income out of which he can repay these debts as opposed to being thrown into an uncertain employment world."

Subsequently, the military judge closed the court for deliberation. When court reopened, the judge indicated that he had written out the sentence he intended to adjudge, and then he examined the pretrial agreement. Upon inquiry from the judge, defense counsel explained that the phrase "any other lawfully adjudged punishment" "refers to the terms not listed which would be forfeitures and a discharge." Thereafter, the judge ascertained from both counsel and from the accused their agreement "that as a result of your deal with the convening authority he can approve nothing greater than 21 months' confinement at hard labor, a bust to E–1 or a reduction to E–1 and he can approve anything else." Thereupon, the judge sentenced the accused to a dishonorable discharge, confine-

ment for 18 months, total forfeitures, and reduction to E–1.

After the convening authority had approved the adjudged sentence, appellant renewed his crusade against a punitive discharge before the Court of Military Review. His appellate counsel persuasively argued that the dishonorable discharge should be disapproved in light of appellant's youth, his intelligence, his demonstrated potential, his remorse and desire to remain on active duty, and the "crushing burden" of the discharge. Agreeing that the discharge was "inappropriately harsh," unpublished opinion at 1, the court went on to explain:

Appellant was a teenager at the time of his offenses. He is an intelligent (GT 135) and motivated young man who apparently became swept up in a romantic involvement for which he did not have sufficient funds. Appellant fled in confusion to avoid his court-martial, but ultimately returned to his senses and turned himself in. Appellant pled guilty and the record indicates attempts to make restitution. Appellant has consistently mentioned his desire to remain in the military service. We need not recite the many dreadful consequences of a punitive discharge, nor are we unmindful of the difficulties appellant may encounter upon a return to active duty after a prolonged period of confinement. However, we deem it appropriate to commute the dishonorable discharge to an additional twelve months of confinement at hard labor. *United States v. Johnson*, 12 U.S.C.M.A. 640, 31 C.M.R. 226 (1962); *United States v. Prow*, 13 U.S.C.M.A. 63, 32 C.M.R. 63 (1962); *United States v. Carrier*, 50 C.M.R. 135 (AFCMR 1975).

Unpublished opinion at 2 (footnote omitted).

Thereafter, without seeking the Court of Military Review's reconsideration of its decision, appellant petitioned this Court for a grant of review. Here, he submits that the court below lacked authority to commute the discharge to additional confinement and that, if it did have such authority, the com-

mutation in this case contravened the mutually understood terms of the pretrial agreement.

## II

The authority of the Courts of Military Review and their predecessor Boards of Review to commute an adjudged court-martial sentence has not always been unquestioned. In *United States v. Goodwin*, 5 U.S.C.M.A. 647, 18 C.M.R. 271 (1955), this Court traced that authority back as far as the American Articles of War of 1806 and the Manual for Courts-Martial, 1895. From this lengthy analysis, Judges Latimer and Brosman concluded that, while Congress intended to grant Boards of Review the power to mitigate a sentence (to reduce "a punishment in degree or quantity," W. Winthrop, *Military Law and Precedents* 471 (2d ed. 1920 Reprint)), it did not grant the Boards the power to commute a sentence (to substitute "a lesser penalty of a different nature," *id.*). Chief Judge Quinn filed a vigorous dissent from that view.

However, in *United States v. Russo*, 11 U.S.C.M.A. 352, 29 C.M.R. 168 (1960), a majority of the Court overruled *Goodwin* and held that Congress fully intended, through Article 66 of the Uniform Code of Military Justice, 10 U.S.C. § 866, for Boards of Review to have the power to commute sentences adjudged by courts-martial. Judge Ferguson, with Chief Judge Quinn concurring and Judge Latimer dissenting, wrote, "With due respect for the force of our prior opinions and the belief of my brother, Latimer, I am compelled to conclude that the Chief Judge's view accurately reflects the intent of Congress in conferring broad authority over sentences upon convening authorities and boards of review." *Id.* at 357, 29 C.M.R. at 173.

Ever since *Russo*, Boards of Review and Courts of Military Review have regularly exercised this commutation power to adjust sentences which, because of their form, were inappropriately harsh. *See, e.g., United States v. Prow*, 13 U.S.C.M.A. 63, 32 C.M.R. 63 (1962). However, when such

authority is exercised, it must be to lessen the severity of a sentence. *See* R.C.M. 1107(d)(1), and Discussion to R.C.M. 1203(b), Manual for Courts-Martial, United States, 1984. *See also* Art. 66.

Of course, in comparing two different species of punishment, it is not always apparent which is the more or the less "severe." We have, however, generally acknowledged that a punitive discharge may lawfully be commuted to some period of confinement. *See, e.g., United States v. Brown*, 13 U.S.C.M.A. 333, 32 C.M.R. 333 (1962) (permissible to substitute 6 months' confinement and partial forfeitures for 6 months for a bad-conduct discharge); *United States v. Prow, supra* (permissible to substitute 3 months' confinement and partial forfeitures for 3 months for a bad-conduct discharge). The rationale supporting this result is that

> [i]n a general way, and fully recognizing the possibility of a later collateral revision, an executed punitive discharge terminates military status as completely as an executed death penalty ends mortal life.... A death sentence changed to confinement reduces the legal degree of punishment. *United States v. Russo*, 11 USCMA 352, 29 CMR 168. Analogously, changing the military equivalent, the punitive discharge, to confinement lessens the severity of the punishment.

13 U.S.C.M.A. at 64, 32 C.M.R. at 64. Nonetheless, the process of commutation cannot be handled mechanically. As we suggested in *United States v. Darusin*, 20 U.S.C.M.A. 354, 356, 43 C.M.R. 194, 196 (1971): "The variety of factors bearing upon the relative severity of a punitive discharge and other punishments has tended to discourage the establishment of a fixed table of substitutions."

At the time of our earlier decisions on commutation, the draft performed an important role in meeting the manpower needs of our fighting forces; and in that context a punitive discharge caused great stigma because it reflected failure in performing an important civic responsibility. Appellant urges that today a punitive dis-

charge is not viewed by a large part of society as "the military equivalent" of death and that, indeed, much of the public sees the recipient of a punitive discharge from the all-volunteer force merely as one who has been "fired" from his "job." In his view the change in public attitudes must be considered in determining the scope of commutation powers under Article 66, just as other types of changes must be taken into account in applying constitutional principles. *See United States v. Trottier*, 9 M.J. 337 (C.M.A.1980).

Undoubtedly, one reason for a punitive discharge's adverse effect is that it generates scorn and distrust of the recipient by others. Therefore, if, due to a change in public attitudes, such a discharge is less productive of demeaning opinions of a recipient, the Court of Military Review should take this into account in determining what commutation action, if any, is appropriate. Certainly, there is no need to rely on a fiction as to the impact of a punitive discharge if, in fact, such an impact does not exist.

■ However, we are convinced that the recipient of a punitive discharge is still subject to considerable stigma—often more than he appreciates when the discharge is issued. Moreover, a punitive discharge may preclude eligibility for veterans' benefits—some of which have substantial value. Thus, we still are of the opinion that a punitive discharge may be commuted into confinement; and we have no doubt that the Court of Military Review was authorized by Article 66 to commute appellant's punitive discharge into additional confinement which would at least be sufficient to raise the aggregate confinement to the 21 months contemplated by the pretrial agreement. As will become apparent, we need go no further than this in the instant case.

### III

■ A pretrial agreement had been reached between Hodges and the conven-

ing authority. This circumstance complicates the problem by requiring consideration of another requirement—namely, that an agreement which has been reasonably relied on by an accused must be enforced against the Government. *See Shepardson v. Roberts*, 14 M.J. 354 (C.M.A.1983); *United States v. Kazena*, 11 M.J. 28 (C.M.A. 1981). If Hodges reasonably believed, in light of his agreement, that he could suffer no more confinement than 21 months, regardless of other elements of his sentence, then imposing on him confinement in excess of that amount, even under the rubric of commutation, would violate that agreement.

■ We reiterated in *United States v. Darusin, supra* at 356, 43 C.M.R. at 196, "that the period of confinement substituted for a punitive discharge could not be 'used to increase the remaining punishment beyond that allowed by law.'"[2] Thus, if a special court-martial were to adjudge a sentence of a bad-conduct discharge and 6 months' confinement, Congress did not contemplate that the jurisdictional ceiling of 6 months which it has set for a special court-martial[3] could be exceeded, without the accused's consent, by commuting the punitive discharge in such a case to additional confinement. Similarly, if the President, pursuant to his authority under Article 36, UCMJ, 10 U.S.C. § 836, prescribes as the maximum punishment for a particular offense dishonorable discharge and confinement for 1 year, then a sentence for that offense cannot be modified by commutation of an adjudged punitive discharge so that it includes more than a year's confinement.

■ A pretrial agreement also has the practical effect of limiting the commutation power of a Court of Military Review. If the agreement places a ceiling on the confinement which the convening authority will approve and if it contains no express or implied condition that this ceiling can be avoided by commutation of the sentence during appellate review, then the agree-

---

**2.** Quoting from *Jones v. Ignatius*, 18 U.S.C.M.A. 7, 9, 39 C.M.R. 7, 9 (1968).

**3.** *See* Art. 19, UCMJ, 10 U.S.C. § 819.

ment operates to limit the accused's liability to serve confinement. Only if an accused expressly waives a limitation on confinement—whether imposed by pretrial agreement or by a provision of the Code or Manual—may that limitation be exceeded through exercise of the commutation power of a convening authority or Court of Military Review.

■ We doubt that Hodges ever anticipated under his agreement that he ultimately might have to suffer 30 months' confinement because of the effects of commuting his dishonorable discharge. There is no indication that either his trial or appellate counsel ever so advised him, and the military judge surely never did so. *Cf. United States v. Darusin, supra* (at a rehearing at which the accused pleaded guilty, the military judge advised him that the maximum punishment was "reduction to the grade of pay grade E–1, total forfeiture of pay and allowances, confinement at hard labor for five months, discharge from the service with a bad conduct discharge and if I do not award a discharge, confinement at hard labor for one year"). *Id.* at 355, 43 C.M.R. at 195.

The Government argues in this Court that, regardless of appellant's original expectations, his energetic quest for disapproval of the punitive discharge waived the agreement's limit on confinement; but, again, there is no indication that appellant expressly anticipated or approved such a result. Instead, it appears that appellant did no more than other military accused frequently do: He sought disapproval of his discharge as a matter of mitigation. While, no doubt, the Court of Military Review might lawfully commute the discharge as a means of achieving an appropriate sentence, it could not do so contrary to the pretrial agreement's specific limit on confinement and in the absence of appellant's expressed awareness and acquiescence.

## IV

Applying these principles, we conclude that, if the Court of Military Review

wished to commute appellant's dishonorable discharge to additional confinement, it could do so by adding a maximum of 3 months' confinement to the adjudged sentence of 18 months (to give a total of 21 months). Normally, we would remand this case to the Court of Military Review for further consideration in light of this opinion. With these principles now clearly established, that court may not have deemed the sentence permitted by this limited commutation to be appropriate; or, considering that possibility, appellant may have expressed to that court his willingness to accept confinement in excess of that previously agreed upon in order to rid himself of the dishonorable discharge.

That action is not necessary here, however. Appellant's release date—even from 30 months' confinement—was several months ago. Moreover, appellant already has been discharged from the Army with a general discharge under honorable conditions. Under these circumstances, we discern no practical harm to appellant from the action we now will order and no disadvantage to the legitimate interests of the Army.

## V

The decision of the United States Army Court of Military Review is reversed insofar as it affirmed a sentence to confinement in excess of 21 months and that excess is declared null and void. In all other respects, the decision below is affirmed.

Judge SULLIVAN did not participate.

COX, Judge (concurring):

While I concur in the principal opinion, I do not join Chief Judge Everett's *dicta* regarding the question of whether an accused could consent to be sentenced in excess of the jurisdictional limits of a special court-martial or in excess of a maximum sentence pursuant to the provisions of the Uniform Code of Military Justice or the Manual for Courts-Martial, United States, 1984 (Revised edition). As these questions are not raised by the facts presented here, I reserve judgment on the resolution thereof.