Dennis J. WALLER, Staff Sergeant, U.S. Army, Petitioner,

v.

Colonel William D. SWIFT, Convening Authority, Commander, U.S. Army Garrison, Presidio of San Francisco, California, Respondent.

Misc. Dkt. No. 90–02.

U.S. Court of Military Appeals.

April 25, 1990.

For Petitioner: *Captain W. Renn Gade* (argued); *Colonel Robert B. Kirby, Lieutenant Colonel Russell S. Estey, Captain Jeffrey J. Fleming* (on brief); *Captain Thomas Tinti.*

For Respondent: *Captain John J. Hogan* (argued); *Colonel Alfred F. Arquilla, Lieutenant Colonel Daniel J. Dell'Orto, Major Martin D. Carpenter* (on brief).

### Opinion of the Court

EVERETT, Chief Judge:

This case comes here on a petition for extraordinary relief in the nature of a writ of habeas corpus. The petition questions the validity of respondent's commutation of Staff Sergeant Waller's bad-conduct discharge to 12 months' confinement.

### I

On August 10–11, 1989, Staff Sergeant Waller was tried by a general court-martial with enlisted members, which had been convened at the Presidio of San Francisco, California. Charge I and its single specification alleged that on or about March 16, 1989, Waller had stolen numerous items of military property, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921. A second charge, also with a single specification, was for dereliction of duties from January 1985 to April 1988, by reason of Waller's willful failure

> to properly acquire, maintain, and dispose of United States Government property received by the 319th Signal Battalion, to-wit: safety lite sticks, antenna mast sections, batteries, stopwatches, flashlights, radios, cameras, binoculars, night vision scopes, camp trailers, and a boat, as it was his duty to do so.

*See* Art. 92, UCMJ, 10 USC § 892. By exceptions and substitutions, petitioner pleaded guilty to the lesser-included of-

fense of wrongfully appropriating some of the items described in Charge I. He also pleaded guilty to dereliction of his duties with respect to more than half of the property items which were the subject of the second charge.

Waller was found guilty as charged.[1] Subsequently, during the sentence proceedings, he gave an unsworn statement in question-and-answer form and mentioned his concerns for his family if he were placed in confinement. He also told the court members:

I would just like to be able to be discharged from the military under a dishonorable condition and go out and make a career. I feel I'm a competent individual. I can, you know, pick up my pieces and keep on going. If I get put away what do I have? I've got a lot of support out there that can't make it without me.

In his argument on sentence, the prosecutor asked that the court members adjudge "the maximum sentence possible on both charges."[2] Defense counsel, on the other hand, requested that Waller be sentenced to a punitive discharge without confinement. In line with this request, the court-martial sentenced the accused to a bad-conduct discharge, forfeiture of $400 pay per month for 1 month, and reduction to the grade of E–1.

In his post-trial recommendation, the staff judge advocate advised the convening authority of "[t]he pertinent facts" and then recommended that

you approve the reduction to E–1 and forfeiture of $400.00 per month for one month, and that you mitigate the Bad Conduct Discharge to confinement for twelve months by signing the action attached at Tab X. R.C.M. 1107(d), MCM (1984) allows a convening authority to mitigate or change an adjudged punishment to one of lesser severity. Commentary in the MCM specifically cites a miti-

gation of a BCD to confinement for six months as an authorized action. Case law supports such a mitigation, and has explicitly found a BCD to be more severe than twelve months confinement at hard labor.

The staff judge advocate explained his recommendation in this way:

Changing the Bad Conduct Discharge to a lesser form of punishment is entirely within your discretion. There are, however, pros and cons to such action. On one side, without the Bad Conduct Discharge, the accused, presently beyond his ETS, will be allowed to separate at the end of his confinement with an Honorable Discharge, or a General Discharge Under Honorable Conditions. Such better discharges would not accurately reflect the nature of the accused's service, and would not be the permanent scar on one's record that a BCD would be. This is a significant benefit to the accused, even though he has an Honorable Discharge from a prior term of service. On the other hand, twelve months confinement would be more visible to soldiers of the command and perhaps a better general deterrent than a sentence without confinement. Confinement would also better serve the societal goal of retribution since it is more immediate and tangible than a discharge. Additionally, confinement would be a benefit to society and the accused by preparing him for the transition to civilian life. He was engaging in criminal activity over a significant period of time. The counselling and rehabilitation available from the Army's confinement system would benefit this particular accused greatly. If we must release a thief to live in the civilian community, we must also shoulder some obligation to do what we can to rehabilitate the criminal. A commutation of the sentence that I now recommend should

---

1. General Court–Martial Order No. 2, dated October 17, 1989, erroneously reflects the finding as to the specification of Charge I.

2. According to the instructions given later by the military judge, "[t]he maximum permissible punishment" for the two offenses of which Waller was convicted was dishonorable discharge, confinement for 10 years and 6 months, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade.

be undertaken only rarely. This *is* such an unusual case; commutation of the discharge to confinement for twelve months is the most appropriate action.

Upon receiving a copy of this document, trial defense counsel asked "that the convening authority disapprove the ... recommendation" for conversion of "the bad-conduct discharge into 12 months' confinement and that the convening authority approve the sentence of the court." Defense counsel explained that "RCM 1107(d)(1) authorizes the convening authority to ... 'change a punishment to one of a different nature as long as the severity of the punishment is not increased.'" However, according to defense counsel, the proposed conversion would violate

> this rule, in that it would, as a practical matter result in more severe punishment in this case. As is evident from the arguments made by both sides at sentencing, confinement was viewed as a more severe punishment.... The sentence reached by the court-members demonstrates that they sided with the Defense and that the *lesser* sentence of a punitive discharge should be adjudged instead of confinement. For the Government to now assert that this punitive discharge is a more severe punishment than confinement totally ignores the arguments offered at sentencing and the sentence adjudicated.
>
> 5. The sentence adjudged is appropriate in this case and should not be disturbed. At sentencing SSG Waller testified that he accepted the verdict as just and that he realized he was deserving of a punitive discharge. For the sake and welfare of his family, however, SSG Waller sought the mercy of the court-members that he not be subjected to confinement. As is noted in the *record of trial*, SSG Waller has three dependents, a wife and two teenagers. His wife is without marketable skills, has only an eight[h] grade education, and is greatly dependent upon SSG Waller for financial support. To sentence SSG Waller to confinement would serve only to push his family

into greater financial constraints. Though SSG Waller may not be deserving of much sympathy for his offenses, it should be noted that the Waller family has suffered dearly from the time of SSG Waller's initial arrest to the present. A severe stigma has been placed on this family and has caused them great stress. They have had virtually no emotional support to help them through this difficult time. Mrs. Waller has struggled to suppress the stress and uncertainty she has felt. This stress finally surfaced last week when she verbally assaulted the Furhmanns at the Bowling Center concerning a complaint MSG Furhmann made against her son. SSG Waller realizes he is to blame for the turmoil that his family has experienced over the past months. He willingly accepts the punishment of a bad conduct discharge because that is a punishment specific to him and not his family. SSG Waller is confident that he can make his family whole again if given the opportunity. Confinement would deny him this opportunity.

> 6. The interests of justice in the court-martial conviction of SSG Waller have been served. After 8 years of active duty and 16 years of reserve service SSG Waller's career with the Army has come to an abrupt halt. SSG Waller lost all retirement benefits at the expense of this federal conviction that will follow him throughout his life. All that remains is his family and his desire to make it whole again. Allow SSG Waller to accomplish this by approving the sentence that has been adjudged.

Subsequently, in an addendum to his post-trial recommendation, the staff judge advocate called the convening authority's attention to the defense contention "that mitigating the Bad Conduct Discharge to confinement for 12 months would violate Rule for Courts Martial 1107(d)(1)." However, it was his own "legal opinion that mitigating the BCD to confinement for 12

months does not violate the Rules for Courts–Martial," and his "recommendation is unchanged."

On October 17, 1989, the convening authority accepted this recommendation, changed the bad-conduct discharge to confinement for 12 months, approved the rest of the sentence, and ordered the sentence to confinement into execution. That same day Waller was placed in confinement at the Fort Ord Installation Detention Facility. Soon thereafter, trial defense counsel requested that the sentence of confinement be suspended under RCM 1108(b) pending appeal; but this request was denied.

On January 8, 1990, Waller petitioned this Court for extraordinary relief in the nature of a writ of habeas corpus. He claimed that he should be released immediately from confinement because Colonel Swift, the respondent, had "exceeded his authority when he converted the adjudged sentence of a bad-conduct discharge to twelve months confinement." This Court directed that respondent show good cause for Waller's continued detention. After considering the pleadings of the parties and hearing oral argument, we decided for petitioner Waller and ordered his release from confinement on February 14, 1990.

## II

■ Waller has invoked this Court's jurisdiction under the All Writs Act, 28 USC § 1651(a). The sentence adjudged by the court-martial included a punitive discharge and so was of a severity that would have authorized direct appellate review by this Court.[3] Indeed, even in its commuted form, the sentence is of such severity. Under these circumstances we have no question about our power under the All Writs Act to entertain a petition for extraordi-

nary relief which raises an issue that would be before us later upon direct review.[4] *Cf. United States Navy–Marine Corps Court of Military Review v. Carlucci,* 26 MJ 328 (CMA 1988); *Murray v. Haldeman,* 16 MJ 74 (CMA 1983); *Shepardson v. Roberts,* 14 MJ 354 (CMA 1983); *Noyd v. Bond,* 395 U.S. 683, 695 n. 7, 89 S.Ct. 1876, 1883 n. 7, 23 L.Ed.2d 631, 643 n. 7 (1969).

Although not contesting this Court's jurisdiction under the All Writs Act, respondent has urged that we exercise our discretion not to entertain the petition for extraordinary relief. We reach a different conclusion. The Founding Fathers wished to protect personal liberty; and so they prohibited suspension of the writ of habeas corpus—the traditional remedy for unlawful imprisonment. U.S. Const., Art. I, § 9, cl. 2; *cf. Ex parte Milligan,* 71 U.S. (4 Wall.) 2, 18 L.Ed. 281 (1866); *Duncan v. Kahanamoku,* 327 U.S. 304, 66 S.Ct. 606, 90 L.Ed. 688 (1946). The Supreme Court has also displayed special solicitude for persons wrongfully confined. Thus, it held that an indigent defendant may not be sentenced to a single day of confinement unless he has been provided a lawyer. *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). Similarly, in *Noyd v. Bond, supra,* the Supreme Court had this comment about a pending petition for habeas corpus:

> While it is true that Captain Noyd has only two days yet to serve on his sentence, he should not be required to surrender his freedom for even this short time unless it is found that the law so requires.

395 U.S. at 699, 89 S.Ct. at 1885.

Recognizing the traumatic effect of confinement, this Court has also sought to assure that an accused will be promptly

---

3. The sentence adjudged included a punitive discharge. Cases in which the sentence includes a dishonorable or bad-conduct discharge or confinement for 1 year or more are subject to automatic review by the Court of Military Review pursuant to Article 66 of the Uniform Code of Military Justice, 10 USC § 866. Thereafter, they may be reviewed in this Court upon the accused's petition or pursuant to certification by

the Judge Advocate General. *See* Art. 67 of the Code, 10 USC § 867.

4. Indeed, we have concluded that our jurisdiction over trials by courts-martia extends to some cases that ordinarily would not be subject to direct appellate review in this Court. *Cf. Unger v. Ziemniak,* 27 MJ 349 (CMA 1989); *McPhail v. United States,* 1 MJ 457 (CMA 1976).

released from unlawful confinement—either before or after trial. *See, e.g., Burtt v. Schick,* 23 MJ 236 (CMA 1986) (summary disposition); *Gragg v. United States,* 10 MJ 286 (CMA 1981) (summary disposition). The case at bar presents no reason for us to deviate from that policy.

The members of the general court-martial rejected the Government's request that Waller be sentenced to confinement; and instead they adjudged a bad-conduct discharge without any confinement. If the convening authority and his staff judge advocate improperly used commutation of sentence to defeat the court-martial's lenient intent, it seems appropriate to consider that action at this time, rather than to await direct appellate review when any relief granted would be of much less value.

### III

Under Article 60(c)(2) of the Uniform Code, 10 USC § 860(c)(2), "[t]he convening authority ..., in his sole discretion may approve, disapprove, *commute,* or suspend the sentence in whole or in part." (Emphasis added.) According to a dictionary definition, "commute" is "1. To substitute (one thing for another): Exchange. 2. To reduce (a penalty, debt, or payment) to a less severe one." *Webster's II New Riverside University Dictionary* 289 (1984). Probably Congress intended for the term "commute" to have the second meaning—a reduction of penalty—rather than merely a substitution.

 In any event, a convening authority's power to "commute" is not absolute and cannot be used to increase the severity of the sentence. A basic theme of the Uniform Code of Military Justice is to prevent command influence. With this in mind, we are sure that Congress never intended that a convening authority would be free to exercise the power of commutation to increase the severity of a sentence when a court-martial is specifically prohibited from doing so in a revision proceeding or a rehearing. *See* Arts. 60(e)(2)(C); and 63, UCMJ, 10 USC § 863.

Furthermore, RCM 1107(d)(1), which concerns action on the sentence, states explicitly, "The convening or higher authority may not increase the punishment imposed by a court-martial"; and the Discussion of this Rule states that "[o]ne form of punishment may be changed to *a less severe punishment of a different nature,* as long as the changed punishment is one which the court-martial could have adjudged." (Emphasis added.)

As we noted in *United States v. Hodges,* 22 MJ 260, 262 (CMA 1986),

> in comparing two different species of punishment, it is not always apparent which is the more or the less "severe." We have, however, generally acknowledged that a punitive discharge may lawfully be commuted to some period of confinement. *See, e.g., United States v. Brown,* 13 USCMA 333, 32 CMR 333 (1962) (permissible to substitute 6 months' confinement and partial forfeitures for 6 months for a bad-conduct discharge); *United States v. Prow, supra* [13 USCMA 63, 32 CMR 63 (1962)] (permissible to substitute 3 months' confinement and partial forfeitures for 3 months for a bad-conduct discharge).

Consistent with this view, the Discussion of RCM 1107(d) observes that "a bad-conduct discharge adjudged by a special court-martial could be changed to confinement for 6 months (but not vice versa)."

> We cautioned, however, in *Hodges* that the process of commutation cannot be handled mechanically. As we suggested in *United States v. Darusin,* 20 USCMA 354, 356, 43 CMR 194, 196 (1971): "The variety of factors bearing upon the relative severity of a punitive discharge and other punishments has tended to discourage the establishment of a fixed table of substitutions."

22 MJ at 262.

In some respects, the situation is similar to that encountered in *United States v. Hannan,* 17 MJ 115 (CMA 1984). There, the military judge had sentenced the accused to confinement for a year and a day. Pursuant to the literal terms of a pretrial

agreement, the convening authority had reduced the confinement by 1 day. Hannan complained that, under the particular facts of his case, the sentence approved was more severe than the sentence adjudged. Although this Court did not grant any relief, we did make clear that a determination of the relative severity of a sentence requires more than superficial consideration.

On at least one prior occasion, this Court has implied that "replacement of an adjudged punitive discharge with confinement at hard labor for 1 year would not increase the severity of the sentence." *See United States v. Darusin*, 20 USCMA at 356, 43 CMR at 196. Two Air Force cases have reached a similar conclusion. *See United States v. Carrier*, 50 CMR 135, 138 (AFCMR), *pet. denied*, 23 USCMA 656 (1975); *United States v. Owens*, 36 CMR 909, 912 (AFBR 1966).

Both a dishonorable and a bad-conduct discharge adjudged by a general court-martial automatically preclude receipt of veterans' benefits, based on the terms of service from which the accused is discharged, *see* 38 USC § 3103; but the effect on a veteran's benefits of a bad-conduct discharge adjudged by a special court-martial must be determined on a case-by-case basis. Therefore, it can be plausibly contended that a bad-conduct discharge adjudged by a general court-martial is a more severe punishment than one adjudged by a special court-martial. Moreover, if, as stated in the Manual Discussion of RCM 1107(d), "a bad-conduct discharge adjudged by a special court-martial" can be commuted into 6 months' confinement, it seems to follow that a bad-conduct discharge imposed by a general court-martial could properly be commuted into substantially more than 6 months' confinement.

However appropriate this rationale might be under some circumstances—especially where the bad-conduct discharge was changed with the accused's consent or, at least, without his well-founded objection—we do not believe that it applies here. Obviously, Waller and his lawyer did not view the 12 months' confinement as being a "lesser" punishment than the bad-conduct discharge. Moreover, from our examination of the record of trial, it seems clear that the members of the court-martial were of this same opinion. Apparently, they believed that a long term of confinement would be harsh for petitioner's family and, at least partly for this reason, chose to sentence him to a punitive discharge, as he had requested, and not to impose confinement.

The defense tactics at trial and the defense view of the effect of the later commutation of the bad-conduct discharge had a logical basis. Waller had received an honorable discharge with respect to an earlier period of service and, therefore, would be entitled to receive veterans' benefits related to that earlier period of service despite the bad-conduct discharge that terminated his current enlistment. Thus, the bad-conduct discharge adjudged by the court-martial would have had less impact on him than on an accused who had not received an honorable discharge from prior service. Furthermore, despite the commutation of the bad-conduct discharge to confinement, Waller remained subject to the stigma of a federal conviction for larceny.

In his recommendation to the convening authority, the staff judge advocate spoke of "mitigat[ing]" the punishment. We view this comment as an exercise in semantics. The references in the staff judge advocate's recommendation to "deterrent" and "retribution" are more consistent with the true—whether intended—effect of changing Waller's bad-conduct discharge to 12 months' confinement.[5]

We need not decide what would be the maximum amount of confinement, if any, to which the convening authority could lawfully have commuted the bad-conduct dis-

---

5. Petitioner has claimed that the commutation of the sentence was motivated by a wish to have Waller available as a possible witness in the trial of another servicemember. The Government replies that his presence as a witness could be assured without placing him in confinement. Therefore, we need not consider the relevance of such putative intent.

charge in this case over defense objection. It suffices that we are convinced that the convening authority was not empowered by the Code or the Manual for Courts–Martial to change the bad-conduct discharge into a period of confinement extending beyond the time at the Fort Ord Detention Center that has now been served by petitioner.

### IV

Accordingly, we have concluded that petitioner should be released forthwith from further confinement at the Fort Ord Detention Facility. This was done on February 14, 1990. However, in view of the time which Waller has already spent in confinement pursuant to the purported commutation of the bad-conduct discharge, that discharge may not be reinstated. The record of trial is subject to review by the Court of Military Review under Article 66 of the Uniform Code of Military Justice, 10 USC § 866.

Judge SULLIVAN concurs.

COX, Judge (dissenting):

A sentence to confinement for 1 year is either less than, equal to, or greater than, being awarded a bad-conduct discharge. Because I am of the opinion that a punitive discharge is a serious and strong punishment, I believe the 1-year sentence to be a commutation. *See United States v. Ohrt,* 28 MJ 301, 306 (CMA 1989).