OPINION OF THE COURT EN BANC
OPINION OF THE COURT ON PETITION FOR EXTRAORDINARY RELIEF IN THE NATURE OF A WRIT OF HABEAS CORPUS
BAUM, Chief Judge:
I
Background
Petitioner was tried by a general court-martial with officer and enlisted members. *829 Pursuant to his guilty plea, he was convicted of one offense of marijuana use in violation of Article 112a, UCMJ. He pled not guilty to the remaining charges, but was convicted of the following offenses: two specifications of indecent acts with a minor, in violation of Article 134, UCMJ, and one specification of disobeying a general order by engaging in sexually intimate behavior aboard a Coast Guard Station, in violation of Article 92, UCMJ. The court sentenced Petitioner on 24 January 1998 to a bad conduct discharge (BCD), two months restriction, three months hard labor without confinement, and reduction to pay grade E-l.
On 22 May 1998, the convening authority acted on the sentence by changing the bad conduct discharge, restriction, and hard labor without confinement to 12 months confinement. He approved the sentence as changed and ordered it executed, confining Petitioner that day. On 26 May 1998, Petitioner submitted a request for deferment of confinement, which was denied by the convening authority. Thereafter, a petition for extraordinary relief in the nature of a writ of habeas corpus was filed with this Court on 28 May 1998 challenging the changed sentence as an unlawful increase in its severity. The Government was ordered to show cause why the requested relief should not be granted and also to show cause why the Court should not find that the convening authority had abused his discretion by disapproving the deferment. After oral argument was heard on the deferment issue on 3 June 1998, the Court, that date, exercised its authority under Moore v. Akins, 30 M.J. 249 (CMA 1990) and ordered Petitioner’s release from the brig, without finding an abuse of discretion, and deferred the remaining confinement until such time as this Court should rule on the lawfulness of the convening authority’s action changing the adjudged sentence. That order is attached as Appendix A.
The issue of the confinement’s lawfulness was argued by counsel for the parties and counsel for the National Institute of Military Justice, as amicus curiae, on 23 June 1998. Petitioner and Respondents have taken the position that, if this Court should find the sentence conversion unlawful, that aspect of the convening authority’s action should be voided and a conditional provision of his action allowed to take effect. That particular provision appears after the convening authority approved the changed sentence and ordered it executed. It reads as follows: “however, if a writ of habeas corpus is issued because this change is unlawful, the change is void and only so much of the adjudged sentence as provides for restriction to Base Milwaukee for two days, reduction to the lowest pay grade, and a bad conduct discharge is approved and, except for the bad conduct discharge, will be executed.” Counsel have not cited authority for a conditional action such as this one, but we need not rule on its efficacy, since our determination with respect to the writ does not actuate the provision.
II
Arguments Concerning the Scope of the Writ Review
Before addressing the question presented by the writ petition, we note first that the request for extraordinary relief is properly before this Court as a matter within our jurisdiction under the All Writs Act, 28 U.S.C. § 1651(a). Collazo v. Welling, 34 M.J. 793 (CGCMR 1992); Addis v. Thorsen, 32 M.J. 777 (CGCMR 1991); Smithee v. Vor-bach, 25 M.J. 561 (CGCMR 1987); Hollywood v. Yost, 20 M.J. 785 (CGCMR 1985). Despite Petitioner’s release from confinement, the question whether a writ of habeas corpus should be granted is still a proper matter before this Court, since that release will become permanent only if we should issue the writ. Although the record of trial has been referred to this Court for review pursuant to Article 66, UCMJ, having been forwarded for that purpose by the convening authority on the day he acted on the record, our decision on the issue before us does not constitute a review under that Article. Assignments of error for that kind of review have not yet been submitted. We are acting at this point solely on the extraordinary writ application.
In that regard, the Government contended during oral argument that, with respect to the writ, we are restricted to ruling as a *830 matter of law whether the 12 months confinement ordered by the convening authority is more or less severe than the adjudged bad conduct discharge. No lesser period may be found to be a lawful commutation, according to the Government, because, in the Government’s eyes, such a finding would require the exercise of our Article 66, UCMJ fact-finding authority, which the Government says we may not utilize in this writ determination. The Government contends that we have only two choices: to find that the 12 months confinement is either lawful or that it is not, with no lesser confinement period permitted. In the event of a finding by this Court that 12 months confinement is a more severe punishment and, thus, unlawful, the Government says the conditional clause of the convening authority’s action will become effective voiding the attempted commutation and reinstating the bad conduct discharge. The Government argues, however, that 12 months confinement is not as onerous as a bad conduct discharge and, therefore, is the lawful result of a proper commutation.
On the other hand, Petitioner argues that any amount of confinement that would require Petitioner’s return to a confinement facility, even for one day, would be more severe than the adjudged sentence and, thus, constitute an unlawful change. He believes, however, that this Court may find a lesser period of confinement to be a lawful commutation by the convening authority, if it does not require actual incarceration. In light of U.S. v. Brown, 13 USCMA 333, 32 CMR 333, 1962 WL 4497 (1962), which held that confinement resulting from commutation runs from the date sentence was adjudged, not the date of commutation, any confinement up to four months and eleven days would meet this test. A reduction of the commutation to confinement of that duration would free Petitioner from further incarceration because he must be credited with the thirteen days of confinement already served before deferment was ordered, plus the almost four months that counts as confinement from the date of sentencing on 24 January 1998 to the date of the convening authority’s commutation action on 22 May 1998. Any more confinement than that is seen by Petitioner as an unlawful increase in the sentence, necessitating a return to the bad conduct discharge pursuant to the convening authority’s conditional clause, just as the Government has argued for any amount of confinement below 12 months.
Ill
Lawfulness of Commutation to Some Period of Confinement
We view the law and the facts differently. Case law makes it clear that, in general, a punitive discharge, by its nature, is more onerous than confinement. U.S. v. Johnson, 12 USCMA 640, 31 CMR 226, 231, 1962 WL 4400 (1962) (Noting the effect on veterans’ benefits and the ineradicable stigma of a punitive discharge as consequences more serious than anything visited upon an accused by confinement); U.S. v. Prow, 13 USCMA 63, 32 CMR 63, 1962 WL 4451 (1962). Our higher court noted in U.S. v. Hodges, 22 M.J. 260, 262 (CMA 1986), that it has “generally acknowledged that a punitive discharge may lawfully be commuted to some period of confinement.” The discussion following RCM 1107(d) reflects the same outlook when it cites the changing of a special court-martial adjudged bad conduct discharge to that court’s jurisdictional maximum confinement of 6 months as an acceptable lessening of punishment. The Court of Appeals for the Armed Forces in U.S. v. Carter, 45 M.J. 168 (1996) found a BCD adjudged by a general court-martial that was converted by the convening authority to 24 months confinement to be a lawful reduction in sentence, based on the particular facts of that case. Depending on the circumstances, however, 12 months confinement can be seen as excessive, as in Waller v. Swift, 30 M.J. 139 (CMA 1990), where two of the three Court of Military Appeals judges viewed 12 months commuted confinement as more severe than a bad conduct discharge for an accused staff sergeant who asked the trial court for a punitive discharge rather than confinement. In rejecting confinement for 12 months, Waller, nevertheless, impliedly found the convening authority empowered to convert the BCD to a lesser period of confinement. Thus, the Waller and Carter cases reconfirm the gen *831 eral proposition in U.S. v. Hodges, supra, that a punitive discharge may lawfully be commuted to some period of confinement, leaving the length of that confinement to the specific facts of each case.
Contrary to the Government assertion, we believe this Court has authority, in reviewing a writ petition, to make that kind of determination from the facts. For that reason, we reject the Government’s 12 months or nothing argument. Waller v. Swift, supra, also dealt with a petition for a writ of habeas corpus. Our higher court, which is restricted to deciding issues of law, not fact, appeared to be able to determine from the facts in that case that a lesser period of confinement constituted lawful commutation. We believe this Court possesses the same power. Accordingly, in deciding the lawfulness of the instant commutation, we have considered the full range of confinement possibilities up to the 12 months that was approved by the convening authority. In doing so, we have compared the collateral consequences to this particular accused of a punitive discharge and the converted confinement. We take it as a given that the collateral effects of a particular sentence must be assessed in determining the relative severity of a change. That was done in Waller v. Suhft, when the Court, at 30 M.J. 144, noted that it can be plausibly contended that a BCD adjudged by a general court-martial is a more severe punishment than one adjudged by a special court-martial, because of the differences between the two discharges in terms of a veteran’s benefits, and then went on to consider the accused’s eligibility for such benefits from a previous honorable discharge. In doing that, the Court also noted the collateral stigma of a federal conviction for larceny as part of the process of comparing the relative severity of a discharge and the commuted sentence. In U.S. v. Carter, supra, the Court found 24 months confinement to be less severe than a BCD after considering, among other things, the collateral consequence of the accused’s potential loss of $750,000 in retirement benefits. The possible sentencing relevance of a punitive discharge’s financial impact was reaffirmed recently by the Court of Appeals for the Armed Forces in U.S. v. Perry, 48 M.J. 197 (1998).
As in Waller, Petitioner has asked us to look at the relative effects of the adjudged sentence and the commuted sentence. He contends that a federal conviction and the stigma of serving a term in prison will penalize him for the future just as much as a punitive discharge. Petitioner and amicus argue that, in today’s world, a BCD does not have the same impact as in years past and may not harm his reputation any more than the fact of having been convicted and confined. We, however, see a more lasting and more debilitating effect from the discharge. Certainly our higher court has viewed the punitive discharge in this light, U.S. v. Hodges, supra, and until that court’s outlook on this subject changes, we must follow its assessment that a BCD is more severe than confinement. U.S. v. Kelly, 45 M.J. 259 (1996); U.S. v. Allbery, 44 M.J. 226 (1996). Accordingly, we find that it was lawful for the convening authority to commute the BCD to confinement of some duration, despite the trial court’s decision not to impose that form of punishment and despite Petitioner’s objection to the sentence conversion.
IV
Factors Bearing on an Acceptable Length of Confinement
In judging just how much confinement may be characterized as a lessening of the sentence, we will look at the facts peculiar to this case, as developed in the briefs and oral argument. In so doing, the views of Petitioner, while not deemed controlling, bear serious consideration. He is a young man, who apparently sees the BCD as something of little consequence to him, whereas imprisonment with its loss of freedom has a much more visible and immediate adverse impact. We see this reaction as normal and not unexpected for someone his age. From our perspective, however, his immediate concerns have mistakenly discounted the more important and continuing adverse effects of the punitive discharge. A punitive discharge’s possible interference with future aspirations is well recognized and should have particular relevance, for this accused, since he spoke of *832 always wanting to go to medical school to become an obstetrician in his unsworn statement at sentencing, which is attached to the Writ Petition as Appendix A. The possibility of Petitioner ever going to medical school may be significantly diminished if he is burdened with a BCD. Furthermore, with respect to other impediments associated with a punitive discharge, Petitioner, as a first term seaman apprentice, does not have an honorable discharge to fall back on as did the accused in Waller.
Petitioner also points out that confinement will prevent his early return home to help his ailing mother and grandparents. That is a factor which we will weigh as part of his perspective on confinement, and certainly one that goes beyond his own narrow self interest. Another consideration bearing on our decision is that confinement for 12 months will also bring automatic forfeiture of all pay and allowances pursuant to Article 58b, UCMJ, while Petitioner is confined, and, according to Petitioner, will prevent him from continuing financial assistance to his mother and grandparents in the sum of $100 a month. Loss of pay is certainly a matter of concern to Petitioner, particularly if it interferes with his voluntary contribution to his mother and grandparents. Nevertheless, we are not persuaded that the addition of forfeitures will necessarily increase the sentence severity to the point where it exceeds that of a BCD. In other words, we believe that a commutation of a punitive discharge to confinement and forfeitures may still constitute a reduction in sentence, depending on the length of the confinement and other facts. The Court of Appeals for the Armed Forces, for example, found a lawful commutation in U.S. v. Carter, supra, despite the convening authority’s conversion of the BCD to confinement for 24 months and additional forfeitures for 35 months.
Petitioner also contends that changing the sentence to one that includes confinement when none was adjudged by the court was improper. In support of that proposition, he points to a letter from a court member attached to the Writ Petition as part of Appendix F, which objects to conversion of the BCD to a year’s confinement as not being equal and fair to the accused after the court had rendered a sentence that it considered fair and just. The court member also talks of the importance of perception and how such an action conveys a bad perception to the military community. Amicus, during oral argument, also emphasized the importance of perceptions and how this particular changed sentence fuels an adverse civilian perception of the military justice system. These are all matters that we have considered, along with the other concerns Petitioner has raised, but in our view, they do not outweigh the direct and adverse impact on Petitioner of a bad conduct discharge. If that impact is eliminated in its entirety, we see a commutation to 12 months confinement as a reduction in sentence.[1]
On the other hand, if changing the punitive discharge to confinement will remove only the BCD and not the possibility of a lesser administrative discharge with comparable collateral consequences, then a lessening of punishment is, at best, illusory. We are convinced that an other than honorable (OTH) administrative discharge carries with it penalizing effects comparable to a BCD. Accordingly, we see a real reduction in severity of the sentence only if all likelihood of an OTH discharge is eliminated. A change to 12 months and an OTH discharge would increase the punishment, in our view. The possibility of such a discharge was raised during oral argument and the Government assured the Court that the convening authority would not initiate action for an OTH discharge. Government counsel, at that time, was not able to guarantee that higher authority would not order such a discharge, but we assume that a discharge of this nature will not be issued if .the convening authority does not start the process.
*833 In finding that 12 months confinement coupled with an OTH discharge would be an increase in the sentence rather than a reduction, there is a factor here that distinguishes this case from U.S. v. Coleman, 31 M.J. 653 (CGCMR 1990), reaff'd on recons 31 M.J. 773 (CGCMR 1990). In Coleman, we found it to be a lawful reduction in sentence for the convening authority to change a dishonorable discharge (DD) to 18 months confinement and a BCD[2]. The difference between the two cases is that in Coleman the DD was converted to 18 months suspended confinement and a lesser discharge, whereas here the lesser administrative discharge would be joined with confinement that is unsuspended. If the BCD in this case had been converted to an OTH discharge and confinement that might not have to be served, the changed sentence would likely qualify for the same treatment as in Coleman. As it is, however, with confinement that remains to be served, we deem it incompatible as a matter of law for the Government to also seek an OTH discharge based on the conduct which was the subject of the charges in this case. Accordingly, the Government, by its action in this case, has effectively waived its power to impose an OTH discharge based on the instant court-martial’s guilty findings, or the underlying conduct. Action by the Government to administratively impose an OTH discharge in this case is inconsistent with the convening authority’s action changing the sentence and would be illegal in our view.
y
Conclusion
Based on the premise that no OTH discharge will be issued, we find the changing of the BCD to 12 months confinement in this ease to be a lawful commutation. The petition for a writ of habeas corpus is denied. The previously ordered deferment of confinement will continue until such time as today’s ruling becomes final, or until the deferment is rescinded by this Court or higher authority, whichever comes first.
Judges KANTOR, WESTON, and McClelland concur.
APPENDIX A
ORDER WITH REGARD TO DEFERMENT OF CONFINEMENT
ORDER — EN BANC
Petitioner filed a request for Extraordinary Relief In the Nature of A Writ Of Habeas Corpus on 28 May 1998 challenging the convening authority’s purported commutation of a sentence without confinement to one with twelve months confinement. In response, this Court issued an order on 29 May 1998 requiring Respondents to show cause within ten days why that relief should not be granted. In addition, Respondents were ordered to show cause by 1530, 1 June 1998, why this Court should not find that the convening authority abused his discretion when he disapproved Petitioner’s request for deferment of confinement. Respondents’ answer that date included a request for oral argument, which was held today, 3 June 1998. In addition to argument on the issues specifically addressed in Respondents’ brief, the question of this Court’s authority to independently order Petitioner’s release from confinement and order deferment of the remaining confinement was also addressed. Both Respondents and Petitioner agreed that this Court has that power pursuant to Moore v. Akins, 30 M.J. 249 (CMA 1990), but differed as to whether such authority should be exercised in this case. Petitioner expressly requested that we order his release and defer the remaining confinement until such time as a decision is rendered on the lawfulness of the convening authority’s action changing a sentence without confinement to one with confinement. In any event, whatever our ruling on deferment, he requested that it be made immediately, with opinion to follow, if necessary.
Petitioner’s request for an immediate rul- , ing is granted. We have determined to exercise our authority under Moore v. Akins, supra, given the extraordinary circumstances *834 of this case, which deprived Petitioner of the right to apply for and receive deferment of confinement from the convening authority. Article 57, UCMJ, authorizes a convening authority to defer confinement “[o]n application by an accused who is under sentence to confinement that has not been ordered executed ____” Petitioner was not under a court adjudged sentence to confinement and, thus, he had no basis for requesting deferment until such time as the convening authority changed his bad conduct discharge and ancillary punishment to twelve months confinement. At that time, however, the convening authority also ordered the confinement executed, which, under the terms of Article 57, UCMJ, precluded his granting deferment. Additionally, by the time Petitioner’s counsel was informed of the convening authority’s action, the record of trial had been forwarded for review, which foreclosed the convening authority from recalling and modifying his action under R.C.M. 1107(f)(2) in such a way that he might have been able to grant deferment. These facts have prompted this Court to afford Petitioner a de novo review of the R.C.M. 1101(c)(3) factors bearing on deferment that appear in his petition for extraordinary relief.
Having made that review, we have determined that Petitioner has met the burden of showing that his interests and that of the community in release outweigh the community’s interests in confinement. Accordingly, it is, by the Court, this 3rd day of June 1998,
ORDERED:
That Petitioner shall be released from confinement forthwith and that his confinement shall be deferred until such time as this Court rules on the lawfulness of the convening authority’s action changing his sentence to twelve months confinement.

. It has already been pointed out that U.S. v. Brown, supra, starts the computation of commuted confinement from the date sentence is adjudged, whether the accused is confined or not. That starting date in this case was 24 January 1998. Accordingly, on 22 May 1998, the date the BCD was changed to 12 months confinement, Petitioner had only 8 months and 2 days to serve. Our Conclusion that 12 months is less severe than a BCD does not depend on this fact.

. The BCD was adjudged in a prior court-martial but, based on the facts relating to the decision to change the DD to 18 months confinement, the BCD was treated as part of the commutation.