# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

| | | |
|---|---|---|
| George L. LULL | ) | Misc. Dkt. No. 2018-04 |
| Master Sergeant (E-7) | ) | |
| U.S. Air Force | ) | |
|     *Petitioner* | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| Carl BROBST | ) | |
| Commander (O-5) | ) | |
| Commanding Officer | ) | |
| Naval Consolidated Brig | ) | |
| Charleston | ) | |
| U.S. Navy | ) | |
|     *Respondent* | ) | Panel 2 |

This order resolves Petitioner's 10 October 2018 request for extraordinary relief in the nature of a writ of habeas corpus and a writ of mandamus, asking this court to order the commanding officer of the Naval Consolidated Brig Charleston to immediately release Petitioner from confinement. Petitioner also requested military appellate defense counsel be detailed to represent him and the Government confirmed such counsel has been detailed by the appropriate authority. We summarize the necessary procedural history in this case to resolve the petition.

On 20 December 2016, the Air Force Sustainment Center Commander (AFSC/CC) requested the approval of the Secretary of the Air Force (SecAF) to recall Petitioner, a reservist, to active duty, as needed, for military justice action, pursuant to Article 2(d)(5), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 802(d)(5). On 7 April 2017, the Acting SecAF approved any recall of Petitioner that the AFSC/CC "ordered or may hereafter order." The purpose of the AFSC/CC's request was to allow a court-martial to adjudge and to require Petitioner to serve confinement or restriction on liberty, if convicted of an offense. On 18 April 2017, the AFSC/CC directed Petitioner be involuntarily ordered to active duty for "preferral of charges, a pre-trial hearing, and, if warranted, by the evidence presented at the preliminary hearing, trial by court-martial." Petitioner's unit published an Air Force Form 938, *Request and Authorization for Active Duty Training/Active Duty Tour*, on 28 April 2017 to bring him onto active duty for the pending disciplinary action. The Air Force Form 938 was amended seven times with the last amendment ending Petitioner's active duty tour the day after his general court-martial adjourned.

On 5 January 2018, a general court-martial composed of officer members convicted Petitioner, contrary to his pleas, of one specification of sexual assault, one specification of stalking, and one specification of assault consummated by a battery, in violation of Articles 120, 120a, and 128, UCMJ, 10 U.S.C. §§ 920, 920a, 928. Petitioner was sentenced to a dishonorable discharge, four years of confinement, and to be reduced to the grade of E-3. On 19 January 2018, the AFSC/CC, the general court-martial convening authority, deferred the mandatory forfeiture of pay and allowances until action, waived them for a period of six months, and directed they be paid for the benefit of Petitioner's dependent daughter.

On 17 May 2018, Petitioner filed an Application for Redress under Article 138, UCMJ, 10 U.S.C. § 938 (Article 138 complaint) with the AFSC/CC claiming his dependent daughter had not yet been paid the six months of forfeited pay and allowances. In his Article 138 complaint, Petitioner explained that his defense counsel believed Petitioner's daughter had not been paid because Petitioner was released from active duty after his court-martial. Petitioner relied on Air Force Instruction (AFI) 51-201, *Administration of Military Justice*, ¶ 2.14.7 (8 Dec. 2017), as authority for his position that his sentence to confinement required that he remain on active duty orders.

On 24 May 2018, the Deputy Director of the 72d Force Support Squadron, Major (Maj) AH, signed two documents to involuntarily recall Petitioner to active duty. The first document involuntarily recalled him from 5 January 2018 to 19 July 2018 for the purpose of "executing the GCMCA approved deferment and waiver of automatic (mandatory) forfeitures stemming from his court-martial conviction and sentence." The second document involuntarily recalled him to active duty from 20 July 2018 to 19 January 2022 "for the purpose of serving his adjudged sentence of confinement from his general court-martial conviction."

On 27 June 2018, the AFSC/CC signed a written status update to Petitioner on his Article 138 complaint. The AFSC/CC informed Petitioner that he "directed [his] Staff Judge Advocate to review the status of the active duty orders, in accordance with AFI 51-201, paragraph 2.14.7., and the status of the deferment and waiver of automatic forfeitures implementation for the benefit of [Petitioner's] daughter." The convening authority noted that on 5 June 2018, Mr. CS, an accounting specialist for Headquarters Air Force Reserve Command, provided notification that a special order was produced and the Defense Finance and Accounting Service (DFAS) would process the order and divert payment to Petitioner's dependent daughter. On 13 July 2018, a military pay voucher was approved by the DFAS in the sum of $16,959.00 to be paid to Petitioner's dependent daughter for the purpose of "recall to AD court order for payment." On 30 September 2018, the AFSC/CC took action, incorporating his 19 January 2018 decision to defer and waive the mandatory forfeitures and

direct they be paid to Petitioner's dependent daughter. AFSC/CC approved the remainder of the sentence and ordered it executed except for the dishonorable discharge.

We docketed this petition on 12 October 2018. On 15 October 2018, Petitioner's direct appeal of his trial was docketed for our review under Article 66(b)(1), UCMJ, 10 U.S.C. § 866(b)(1). On 19 October 2018, this court ordered the Government to show good cause as to why Petitioner's requested relief should not be granted. The Government submitted a timely response requesting this court deny the petition. We also granted the Government's unopposed motion to attach a declaration of Mr. CS, the documents signed by Maj AH, and the DFAS military pay voucher. On 14 November 2018, Petitioner submitted a reply to the Government's response to our show cause order, contending that Petitioner's confinement remains unlawful as he is in an inactive duty status due to various defects in the documents signed by Maj AH, as will be discussed further below.

Having summarized the procedural history, we turn to the applicable law. The All Writs Act, 28 U.S.C. § 1651(a), grants this court authority to issue extraordinary writs necessary or appropriate in aid of its jurisdiction. *See Loving v. United States*, 62 M.J. 235, 246 (C.A.A.F. 2005) (quoting *Clinton v. Goldsmith*, 526 U.S. 529, 534 (1999)). "However, the Act does not enlarge our jurisdiction, and the writ must be in aid of our existing statutory jurisdiction." *Chapman v. United States*, 75 M.J. 598, 600 (A.F. Ct. Crim. App. 2016) (citing *Goldsmith*, 526 U.S. at 534–35). "As the text of the All Writs Act recognizes, a court's power to issue any form of relief--extraordinary or otherwise--is contingent on that court's subject matter jurisdiction over the case or controversy." *United States v. Denedo*, 556 U.S. 904, 911 (2009). "To establish subject matter jurisdiction, the harm alleged must have had 'the potential to directly affect the findings and sentence.'" *LRM v. Kastenberg*, 72 M.J. 364, 368 (C.A.A.F. 2013) (quoting *Ctr. for Constitutional Rights v. United States*, 72 M.J. 126, 129 (C.A.A.F. 2013)).

"The writ of mandamus is a drastic and extraordinary remedy reserved for really extraordinary causes." *EV v. United States*, 75 M.J. 331, 332 (C.A.A.F. 2016) (citations and internal quotation marks omitted).

The "essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Our superior court's predecessor called the writ of habeas corpus the "traditional remedy for unlawful imprisonment." *Waller v. Swift*, 30 M.J. 139, 142 (C.M.A. 1990) (citations omitted). Our assessment is not "whether the Petitioner presented a meritorious case as to why he *should* be released, but rather

whether his confinement is *illegal.*" *Clark v. United States*, 74 M.J. 826, 827 (N.M. Ct. Crim. App. 2015).

The Supreme Court has held three conditions must be met before a court provides extraordinary relief: (1) the party seeking the relief must show the "right to issuance of the writ is clear and indisputable;" (2) the party seeking the writ must have "no other adequate means to attain the relief;" and (3) "even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380–81 (2004) (citations and internal quotation marks omitted).

AFI 51-201 "implements the [UCMJ], the Manual for Courts-Martial, and Air Force Policy Directive 51-2, *Administration of Military Justice*[,]" for the Department of the Air Force. An entire section addresses UCMJ actions involving members of the Air Force Reserve and Air National Guard. AFI 51-201, ¶ 2.14. Specifically for Petitioner's case,

> [a]t . . . final adjournment of the court-martial, the reserve component member ordered to active duty for the purpose of conducting disciplinary proceedings should be released from active duty within one working day, unless the order to active duty was approved by the Secretary of the Air Force and confinement was adjudged. The court-martial convening authority who convenes the court shall fund the active duty orders of the reserve component member being court-martialed, including the duration of confinement.

*Id.* at ¶ 2.14.7.

We begin our analysis with a determination of whether we have jurisdiction to decide the petition. The Government does not dispute our jurisdiction and we conclude we have jurisdiction as Petitioner's adjudged sentence is within this court's jurisdictional mandate under Article 66, UCMJ. *See Howell v. United States*, 75 M.J. 386, 390 n.4 (C.A.A.F. 2016). While we determine we have jurisdiction, we are mindful that we do not have jurisdiction to oversee military justice generally. *See Goldsmith*, 526 U.S. at 534. As the Army Court of Criminal Appeals noted in deciding whether to grant a writ of mandamus, "The Judge Advocate General, staff judge advocates, and convening authorities are among those with significant duties in overseeing military justice." *Bergdahl v. Burke*, Army Misc 20150624, 2015 CCA LEXIS 431 at *4 (A. Ct. Crim. App. 8 Oct. 2015) (unpub. op.) (citations omitted).

Petitioner argues that his post-trial confinement is illegal as he has not been on active duty since 6 January 2018, as required by AFI 51-201, ¶ 2.14.7. Petitioner also argues the documentation submitted by the Government in its

motion to attach is defective as: (1) the orders were signed by Maj AH who has no authority to recall him to active duty; (2) there is no indication Maj AH acted on behalf of the general court-martial convening authority; (3) the wrong confinement location is listed; and (4) the letterhead is not the same as the general court-martial convening authority's.

The Government, in response to our show cause order, initially requests we deny the petition, as moot, arguing that because Petitioner's case has been docketed with this court, his unlawful confinement assertion should be addressed through the normal course of appellate review. We decline to follow this approach. We are all too familiar with the length of time it often takes for appellate review in a contested case, like Petitioner's, with a lengthy transcript and multiple allegations of legal error already raised during the clemency process. Because Petitioner has already served 11 months of confinement, we decline to dismiss the petition, as moot, solely on the grounds that his case is now before us on appeal.

As to the substance of the petition, the Government argues that with the additional documentation submitted via the motion to attach, the record shows Petitioner is on active duty through the duration of his confinement sentence, and his dependent daughter was paid the waived forfeiture of pay and allowances. Based on our review of the record in this case, we find Petitioner has not carried his burden to show it is clear and indisputable that his confinement is illegal because he is not on active duty. In addition, we agree that Petitioner's dependent daughter has been paid appropriately.

Our analysis hinges on whether the purported defects in the documents signed by Maj AH on 24 May 2018 are of a nature to make it clear and indisputable that Petitioner is not on active duty. Given this framework, we do not need to address potential discrepancies related to Petitioner's current confinement location. Instead, we focus on whether it is clear and indisputable that Maj AH involuntarily recalled Petitioner without proper authority.

The two documents signed by Maj AH bear the same special order numbers as the original convening order and an amendment to that order for Petitioner's general court-martial. The original convening orders are signed by the AFSC staff judge advocate as "For the Commander," and bear the signature block of the AFSC/CC. We acknowledge that the signature blocks on the documents signed by Maj AH do not contain the signature block stating, "For the Commander." We also note the record does not contain documentation from the AFSC/CC ordering Petitioner's involuntary recall for the purpose of serving confinement. Those irregularities, while curious, do not make it clear and indisputable that Petitioner is not on active duty, and therefore illegally confined. Petitioner failed to demonstrate that it is clear and indisputable that Maj AH was acting without authority or direction from the AFSC/CC when she

signed the documentation to involuntarily recall Petitioner for purposes of post-trial confinement. In assessing whether Petitioner met his burden, we note the AFSC/CC specifically references the recall paperwork in his response to Petitioner's Article 138 complaint and the staff judge advocate signed the original orders convening Petitioner's court-martial as "For the Commander" to effect the AFSC/CC's intent at referral.

Even if we determined that Maj AH did not act with the proper authority, we would still not issue a writ of habeas corpus as there are other adequate means to attain the relief requested. As we noted above, staff judge advocates and convening authorities have significant duties in overseeing military justice. Further, documents and orders are routinely amended to correct inaccurate information. Finally, should the Government take no action, Petitioner has an opportunity on direct appeal to raise this issue anew with this court.

Given our resolution of Petitioner's request for extraordinary relief in the nature of a habeas corpus writ, we also deny his request for a writ of mandamus ordering Petitioner's release from confinement, as moot.

Accordingly, it is by the court on this 6th day of December, 2018,

**ORDERED:**

Petitioner's request for appointment of military appellate defense counsel is **DENIED AS MOOT**. The Petition for Extraordinary Relief in the Nature of a Writ of Habeas Corpus is **DENIED**. The Petition for Extraordinary Relief in the Nature of a Writ of Mandamus is **DENIED AS MOOT**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court