# UNITED STATES AIR FORCE
## COURT OF CRIMINAL APPEALS

| | | |
|---|---|---|
| Jesse L. BRAZELL | ) | Misc. Dkt. No. 2018–08 |
| Staff Sergeant (E-5) | ) | |
| U.S. Air Force | ) | |
| *Petitioner* | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Cliff J. UDDENBERG | ) | |
| Commander (O-5) | ) | |
| Commanding Officer | ) | |
| Naval Consolidated Brig | ) | |
| Miramar | ) | |
| U.S. Navy | ) | |
| *Respondent* | ) | Panel 1 |

This order resolves Petitioner's 16 October 2018 request for extraordinary relief in the nature of a writ of habeas corpus (Petition) under the All Writs Act, 28 U.S.C. § 1651(a). Petitioner asks this court to order the commanding officer of the Naval Consolidated Brig Miramar to immediately release Petitioner from confinement on the grounds that "Petitioner remains in the custody of CDR Cliff Uddenberg as a result of a court-martial which lacked subject-matter jurisdiction due to the provisions of the Japan-U.S. Status of Forces Agreement." We summarize the necessary procedural history in this case to resolve the Petition.

Petitioner, while assigned to the 592d Special Operations Maintenance Squadron at Duke Field, Florida, was tried by a general court-martial convened at Eglin Air Force Base (AFB), Florida, from 22 to 26 May 2017, for offenses alleged to have occurred in July 2016 during Petitioner's unofficial travel in a leave status to Okinawa, Japan. A panel of officer and enlisted members found Petitioner guilty, contrary to his pleas, of two specifications of sexual assault of a child and one specification of sexual abuse of a child, in violation of Article 120b, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920b. The three offenses involved Petitioner's conduct with a 12-year-old female who lived in Louisiana with her mother but was in Japan to visit her father, a United States government contract employee who lived and worked in Okinawa. Petitioner was sentenced to a dishonorable discharge, confinement for seven years, forfeiture of all pay and allowances, and reduction to the grade of E-1. On 11 September 2017, the convening authority approved

the sentence as adjudged and ordered it executed except for the dishonorable discharge.

On 19 September 2017, Petitioner's direct appeal of his trial was docketed for our review under Article 66(b)(1), UCMJ, 10 U.S.C. § 866(b)(1). On 29 June 2018, Petitioner filed three assignments of error, which the United States answered on 30 July 2018. On 4 October 2018, Petitioner moved this court for leave to file a supplemental assignment of error, claiming the court-martial that tried him at Eglin AFB lacked subject-matter jurisdiction. Petitioner based his claim on provisions of the executive agreement that was negotiated pursuant to Article VI of the *Treaty of Mutual Cooperation and Security between the United States of America and Japan*, Japan-U.S., Jan. 19, 1960, 11 U.S.T. 1632, entitled *Agreement under Article VI of the Treaty of Mutual Cooperation and Security between the United States of America and Japan, Regarding Facilities and Areas and the Status of United States Armed Forces in Japan*, Japan-U.S., Jan. 19, 1960, 11 U.S.T. 1652 (SOFA). The United States filed its opposition to Petitioner's motion on 9 October 2018. This court denied Petitioner's motion for leave to file a supplemental assignment of error on 15 October 2018.

On 16 October 2018, Petitioner petitioned this court to order Respondent to immediately release Petitioner from confinement, again claiming the court-martial that tried him lacked subject-matter jurisdiction under the SO-FA. We docketed the Petition on 18 October 2018, and, on 23 October 2018, we ordered the Government to show good cause as to why Petitioner's requested relief should not be granted. The Government submitted a timely response on 31 October 2018 requesting this court deny the Petition.

Having summarized the procedural history, we turn to the applicable law. The "essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Our superior court's predecessor called the writ of habeas corpus the "traditional remedy for unlawful imprisonment." *Waller v. Swift*, 30 M.J. 139, 142 (C.M.A. 1990) (citations omitted). Our assessment is not "whether the Petitioner presented a meritorious case as to why he *should* be released, but rather whether his confinement is *illegal*." *Clark v. United States*, 74 M.J. 826, 827 (N.M. Ct. Crim. App. 2015).

The Supreme Court of the United States has held three conditions must be met before a court provides extraordinary relief: (1) the party seeking the relief must show the "right to issuance of the writ is clear and indisputable;" (2) the party seeking the writ must have "no other adequate means to attain the relief;" and (3) "even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is

appropriate under the circumstances." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380–81 (2004) (citations and internal quotation marks omitted).

Subject-matter jurisdiction is established by showing military status at the time of the commission of an offense punishable by the UCMJ. *United States v. Ali*, 71 M.J. 256, 261 (C.A.A.F. 2012) (citation omitted); *see generally Solorio v. United States*, 483 U.S. 435, 439 (1987) ("In an unbroken line of decisions from 1866 to 1960, [the Supreme Court has] interpreted the Constitution as conditioning the proper exercise of court-martial jurisdiction over an offense on one factor: the military status of the accused."). Subject-matter jurisdiction is exercised "over the offenses" and personal jurisdiction is exercised "over the accused." *See, e.g., United States v. Nealy*, 71 M.J. 73, 76 (C.A.A.F. 2012). Post-*Solorio*, "the status of the individual is the focus for determining both jurisdiction over the offense and jurisdiction over the person." *Ali*, 71 M.J. at 264 (citations omitted). "The only difference is that jurisdiction over the person depends on the person's status as a 'person subject to the Code' both at the time of the offense and at the time of trial." *Id.* at 265 (citations omitted).

We conclude Petitioner lacks standing to contest the exercise of subject-matter jurisdiction by the United States.[1] For this determination, we rely on Rule for Courts-Martial (R.C.M.) 201(d)(3), which states,

> Where an act or omission is subject to trial by court-martial and by one or more civil tribunals, foreign or domestic, the determination which nation, state, or agency will exercise jurisdiction is a matter for the nations, states, and agencies concerned, and is not a right of the suspect or accused.

*See United States v. Choisnard*, No. ACM 36654, 2008 CCA LEXIS 265, at *11–12 (A.F. Ct. Crim. App. 15 Jul. 2008) (unpub. op.) ("[T]his issue is squarely addressed in both the Rules for Court-Martial and in standing precedent. These authorities provide that [the appellant] has no standing to object to 'violations' of the SOFA and even if he did, the court-martial still would have jurisdiction because of the appellant's active duty status.").

Petitioner argues that the SOFA gives Japanese authorities the primary right to exercise jurisdiction and overrides "contrary" United States law that defines the subject-matter jurisdiction of a court-martial and R.C.M.

---

[1] Petitioner does not contest that he was a member of the United States Air Force and subject to the *personal* jurisdiction of a court-martial. Petitioner also does not dispute that he was on active duty at the time of the charged offenses and that he was charged with offenses punishable by Article 120b, UCMJ.

201(d)(3), which denies Petitioner standing to challenge that jurisdiction. Petitioner further argues that, because Japan never released jurisdiction to the United States, his court-martial was a nullity and this court must set aside and dismiss the findings of guilty and order Petitioner's immediate release from confinement. We are not persuaded.

The SOFA allocates exclusive and concurrent jurisdiction between Japan and the United States for offenses committed in Japan by American service-members. The SOFA does so without using the terms "personal" and "subject-matter" jurisdiction and does not set forth discrete rules for assigning jurisdiction over an offense separate from assigning jurisdiction over a service-member in like manner as does military law. Article XVII, paragraph 2 of the SOFA affords the United States and Japan exclusive jurisdiction with respect to offenses that the other does not punish. In Petitioner's case, neither country has exclusive jurisdiction because both countries criminalize sexual abuse of minors.[2]

In the absence of exclusive jurisdiction, Article XVII, paragraph 1, of the SOFA assigns to both countries "the right to exercise concurrent jurisdiction" for all other circumstances. Consequently, in Petitioner's case jurisdiction is not exclusive but concurrent, and the United States retains the plenary right to exercise all disciplinary jurisdiction for violations of the UCMJ, even if Japan also criminalizes the same conduct and the offenses are committed in Japan.

Article XVII, paragraph 3 of the SOFA provides that Japanese authorities have the *primary* right to exercise concurrent jurisdiction where the purported victim of the offense is the dependent of a contractor as is the case here. Petitioner argues this primary right is effectively *exclusive* until the primary right is affirmatively waived. We disagree. Even assuming arguendo that provisions of the SOFA have the force of United States law as Petitioner claims they do,[3] we decline to interpret a primary right to exercise concurrent

---

[2] Petitioner, citing Keihō [Pen. C.] 1907, art. 176, no. 45 (Japan), avers Japanese law prohibits the sexual abuse of minors in a provision substantially similar to the Article 120b, UCMJ, offense of which Petitioner was convicted.

[3] In *United States v. Murphy*, 18 M.J. 220 (C.M.A. 1984), our superior court observed:

> While there is still some dispute over the relative supremacy of Executive agreements as contrasted to treaties, and whether or not specific international agreements are deemed to be self-executing, the question of the binding nature of the obligations of the Japanese SOFA and its implementing interpretations was resolved by *Wilson v. Girard*.

*(Footnote continues on next page)*

jurisdiction as an exclusive right of jurisdiction. Although prosecutorial priority is addressed by the SOFA, the United States neither waived nor ceded subject-matter jurisdiction to Japan. Thus, the SOFA provides no reason to depart from established law that subject-matter jurisdiction is determined by showing military status at the time of the commission of an offense punishable by the UCMJ. *Ali,* 71 M.J. at 261.

We conclude Petitioner's court-martial did not lack subject-matter jurisdiction and Petitioner lacks standing to challenge the exercise of concurrent jurisdiction. Consequently, Petitioner has failed to demonstrate a clear and indisputable right to the issuance of a writ of habeas corpus.

Accordingly, it is by the Court on this 28th day of January, 2019,

**ORDERED:**

The Petition for Extraordinary Relief in the Nature of a Writ of Habeas Corpus is **DENIED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court

---

*Id.* at 229 (citing *Wilson v. Girard,* 354 U.S. 524, 528–29 (1957)). In *Wilson,* the Supreme Court held the United States was not barred by the Constitution or statute from waiving its primary right of jurisdiction under the then-existing SOFA and agreeing to deliver a servicemember to Japan for trial.